*In re* JUAN CAPESTANY RODRÍGUEZ.

*Número:* TS-4065        *Resuelto:* 30 de junio de 1999

*Carmen H. Carlos*, Directora de la Oficina de Inspección de Notarías, en informe; *Juan Capestany Rodríguez, pro se.*

PER CURIAM:

# I

El 1ro de febrero de 1999, la Oficina de Inspección de Notarías (en adelante O.D.I.N.) nos remitió un informe en el cual señalaba serias deficiencias en la obra notarial del Lcdo. Juan Capestany Rodríguez (en adelante el Notario).

Del referido informe se desprende que el 20 de marzo de 1998 se realizó una inspección preliminar del Registro de Testimonios que llevaba el Notario y se encontró que desde el *25 de octubre de 1990 hasta el día de la inspección,* éste no había adherido ni cancelado sellos de asistencia legal en mil doscientas setenta y dos (1277) entradas a razón de dos dólares ($2.00) cada una, para un total de *dos mil quinientos cincuenta y cuatro dólares ($2,554).* En esa misma fecha el Inspector de Protocolos concertó otra cita para el 24 de abril de 1998, para la cual el Notario habría subsanado dichas deficiencias. En la fecha concertada el Inspector no encontró cambio alguno en el Registro de Testimonios, realizando entonces un examen de todos los tomos del Protocolo del Notario, encontrando que éste no había adherido Sellos de Rentas Internas por la suma de *tres mil novecientos cuarenta y cinco dólares con cincuenta centavos ($3,945.50)* y sellos notariales por la suma de diez dólares ($10).

Así las cosas, el Inspector reexaminó el Protocolo del Notario el 27 de mayo de 1998, encontrándolo en iguales condiciones que en la inspección del mes anterior. El Inspector volvió a realizar un examen el 19 de agosto de 1998, del cual surge que el Notario había adherido doscientos noventa y un (291) sellos de asistencia legal por un valor total de *quinientos ochenta y dos dólares ($582).*

Es decir, para esa fecha sólo había subsanado una ínfima parte de las deficiencias señaladas, por lo cual debía

al Registro de Testimonios un total de *mil novecientos setenta y dos dólares ($1,972)* y al Protocolo *tres mil novecientos cincuenta y cinco dólares con cincuenta centavos ($3,955.50)* entre Sellos de Rentas Internas y sellos notariales.

Luego de esto, al Notario se le notificó otra visita señalada para el 17 de noviembre de 1998. Éste solicitó una prórroga debido a que por el paso del huracán Georges no había podido adherir los sellos que le faltaban a su obra notarial. Esta solicitud fue denegada y el Inspector lo visitó nuevamente en la fecha notificada. En esta ocasión tampoco encontró cambios en la obra notarial.

Como consecuencia de la inacción del Notario, O.D.I.N. nos rindió el antedicho informe solicitándonos que se le ordenase cumplir con su deber de cancelar y adherir los sellos de asistencia legal, de rentas internas y notariales en su obra notarial, y que impusiésemos las sanciones disciplinarias procedentes.

A estos efectos, emitimos Resolución de 26 de febrero de 1999, para ordenar al Notario que dentro del término de quince (15) días subsanara las deficiencias en sellos que adeudaba a su obra notarial y para que mostrara causa por la cual no debíamos suspenderle indefinidamente del ejercicio de la abogacía.

En cumplimiento con nuestra orden, el Notario compareció mediante Moción explicativa de 29 de marzo de 1999, informándonos que a esa fecha no había culminado de subsanar las deficiencias señaladas, pero que esperaba "que en un breve plazo esté completamente subsanada". Íd.

En cuanto a la mostración de causa, el Notario nos indica que en los veintisiete (27) años que lleva ejerciendo la profesión, nunca se ha presentado una queja en su contra. Además, intima que su situación económica va a mejorar pronto. También hace hincapié en que la notaría se considera separada del ejercicio de la abogacía, esto, para persuadirnos de que no debemos separarlo del ejercicio de la

abogacía, sino de la práctica de la notaría únicamente. Solicita que de imponérsele alguna sanción disciplinaria, ésta conste de una amonestación, ya que está dispuesto a cumplir con el ordenamiento notarial.

## II

**[1]** Una vez más reafirmamos la trascendencia de la función del notario en la esfera privada y profesional hasta remontarse a una función pública que requiere suma diligencia y celo profesional de quien la ejerce en Puerto Rico.[1]

El notario puertorriqueño está vinculado a un estricto cumplimiento con la Ley Notarial de Puerto Rico, Ley Núm. 75 de 2 de julio de 1987 (4 L.P.R.A. sec. 2001 *et seq.*) y con los cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. El incumplimiento con una de estas fuentes de obligaciones y deberes del notario implica ineludiblemente la acción disciplinaria correspondiente no sólo en la función de éste como notario, sino también como abogado. Esto es así ya que en el notario, por su condición de abogado, se funden dos (2) facetas esenciales en la administración de la justicia.[2] La primera, la que surge como profesional del Derecho, para la cual está versado en la técnica jurídica y capacitado para dar consejos y servir de guía a todo interesado, no sólo en este rol sino en el de notario. La segunda faceta, la de notario, lo convierte en un funcionario público investido de autoridad y con capacidad autenticadora y legalizadora en el plano de las relaciones privadas, imponiendo a los actos que ve y oye —*vidit et audit*— una eficacia autenticadora cubierta con una presunción de veracidad, producto neto que parte del supuesto

---

[1] *In re Colón Muñoz*, 131 D.P.R. 121 (1992); *In re Cruz Ramos*, 127 D.P.R. 1005 (1991).

[2] *In re Colón Muñoz*, supra, págs. 149–150, citando a *In re Feliciano*, 115 D.P.R. 172 (1984).

de un *leal acatamiento de los requisitos y las formalidades de ejercer con fidelidad su encomienda.*([3])

Una vez el notario se aparta de cumplir con estos requisitos y las formalidades, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la función pública en él investidas.

■ Teniendo en cuenta la función pública del notario, éste siempre tiene que considerar que los Protocolos pertenecen al Estado, siendo el notario un mero custodio de éstos por delegación de aquél.([4]) Por lo tanto, los deberes impuestos en el ordenamiento notarial, en cuanto a la forma de llevar y mantener el Protocolo, tienen que ser acatados y respetados con máxima rigurosidad.

■ De esta forma, la Ley Notarial de Puerto Rico dispone que el notario tiene el deber de adherir y cancelar en su Protocolo los Sellos de Rentas Internas y un sello notarial en cada instrumento original que otorgue y en las copias certificadas.([5]) Así, también, se impone el deber a todo notario de adherir el sello de asistencia legal por cada afidávit, testimonio o declaración jurada que el notario autorice.([6])

■ Reiteradamente hemos establecido que el dejar de adherir los Sellos de Rentas Internas y cancelarlos al momento de autorizar los documentos públicos otorgados es una falta grave por parte del notario.([7]) Además, al no adherir los Sellos de Rentas Internas se defrauda al erario.([8])

---

([3]) *In re Colón Muñoz,* supra.

([4]) Art. 48 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2072; *In re Antonio Ríos Acosta,* 128 D.P.R. 412 (1991); *In re Baigés Chapel,* 104 D.P.R. 638 (1976).

([5]) 4 L.P.R.A. sec. 2021 (1994).

([6]) 4 L.P.R.A. sec. 896.

([7]) *In re Villanueva Laguer,* 142 D.P.R. 556 (1997); *In re Colón Muñoz,* supra, pág. 153; *In re Figueroa Abreu,* 124 D.P.R. 810 (1989).

([8]) *In re Casiano Silva,* 145 D.P.R. 343 (1998); *In re Platón,* 113 D.P.R. 273 (1982).

■ Más importante aún, está el hecho de que conforme a nuestra doctrina, el pago de todo derecho de arancel o de otra índole que conforme a la ley devengue el instrumento público, será sufragado por los interesados en el otorgamiento del documento.(⁹) Lo que implica que si el notario cobra los honorarios arancelarios y luego no adhiere los Sellos de Rentas Internas, de asistencia legal o notariales que la ley le impone, estará sujeto a sanciones y acciones disciplinarias sin menoscabo de su responsabilidad legal.(¹⁰) También podría resultar en la configuración del delito de apropiación ilegal.(¹¹)

■ Esta práctica de no adherir y cancelar los debidos sellos, no sólo representa una violación de la ley notarial, sino que, en el caso de escrituras o sus copias certificadas, las expone a la anulabilidad e ineficacia jurídica de estos documentos en perjuicio de los otorgantes o de terceros.(¹²) Por tanto, el incumplimiento del notario con este deber puede tener efectos funestos para la sociedad en que el notario convive y trabaja.(¹³) Hasta tanto dichos sellos sean adheridos y cancelados, la validez de dichas escrituras, o de las copias certificadas está en entredicho, pues éstas son anulables.(¹⁴)

## III

De un análisis del presente caso se desprende que a pesar de las órdenes de este Tribunal y de O.D.I.N., el Notario parece no entender la importancia del "deber que tiene todo notario de adherir los Sellos de Rentas Internas,

---

(⁹) *In re Colón Muñoz*, supra, pág. 154.

(¹⁰) *In re Feliciano*, supra, pág. 181.

(¹¹) *In re Casiano Silva*, supra, pág. 347; *In re Merino Quiñones*, 115 D.P.R. 812 (1984).

(¹²) *In re Colón Muñoz*, supra, pág. 156.

(¹³) *In re Colón Muñoz*, supra, pág. 156; *In re Ralat Pérez*, 124 D.P.R. 745 (1989).

(¹⁴) *In re Colón Muñoz*, supra, pág. 156.

notariales y Asistencia Legal al momento de llevar a cabo el acto notarial correspondiente, y de las serias consecuencias que el incumplimiento con dicho deber podría acarrear ...". *In re Casiano Silva*, 145 D.P.R. 343, 346 (1998).

■ Además, tampoco parece comprender la gravedad de desatender los requerimientos de O.D.I.N. y de este Tribunal. Una vez el Inspector de Protocolos detecta incumplimientos con estas disposiciones legales, es deber del notario corregirlas con suma diligencia. La ausencia de corrección combinada con la gravedad de tales deficiencias permiten a este Tribunal hacer valer nuestra facultad disciplinaria sobre los notarios y nuestra revisión sobre su función pública.[15]

El Notario en el presente caso no ha cumplido diligentemente con su deber de corregir las deficiencias señaladas por la O.D.I.N. Peor aún, el Notario desobedeció la orden de este Tribunal a los efectos de que tenía que adherir los sellos que faltaban en un término de quince (15) días, luego de notificada nuestra Resolución de 26 de febrero de 1999.

■ Estas actuaciones del Notario, por sí solas, acarrean la separación inmediata del ejercicio de la abogacía. Así, hemos sido enérgicos al señalar que " 'los abogados tienen la obligación ineludible de responder con diligencia a los requerimientos de este Tribunal ...' ". (*In re Guemárez Santiago I*, 146 D.P.R. 27, 29 (1998), y que no toleraremos la incomprensible y obstinada negativa de un miembro de nuestro foro de cumplir con las órdenes de este Tribunal.[16]

En el caso ante nos el Notario ha incurrido en conducta reprobable al no adherir Sellos de Rentas Internas, de asistencia legal y notariales por un período de ocho (8) años en su obra notarial. Sellos que suman la cantidad de seis mil quinientos nueve dólares con cincuenta centavos ($6,509.50), de los cuales repuso únicamente quinientos

---

[15] *In re Colón Muñoz*, supra, pág. 150.

[16] *In re Nicot Santana*, 129 D.P.R. 717 (1992).

ochenta y dos dólares ($582), y alguna otra cantidad indeterminada que no surge de su moción explicativa. El Notario no presenta justificación alguna que nos persuada por su craso incumplimiento, tanto con su deber notarial de adherir los sellos que exige la ley, como con su deber como abogado de evitar prácticas censurables como la de no obedecer las órdenes de O.D.I.N. y de este Tribunal.

En vista de las graves faltas cometidas por el Lcdo. Juan Capestany Rodríguez, y dado el carácter repetitivo y el cúmulo de estas serias omisiones, *se decreta su separación indefinida del ejercicio de la abogacía hasta que este Tribunal otra cosa disponga. Se ordena al Alguacil General de este Tribunal que proceda a incautarse de la obra notarial, incluso sello notarial del licenciado Capestany Rodríguez, para ser remitida, examinada y oportunamente objeto de un informe por parte de la O.D.I.N. Se ordena, además, que la presente Opinión "per curiam" y sentencia le sea notificada personalmente a éste por la Oficina del Alguacil General de este Tribunal.*

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Andréu García no intervino. El Juez Asociado Señor Negrón García se inhibió.