per curiam:
Este procedimiento disciplinario nos brinda la oportunidad de expresarnos sobre la norma pautada en In re Pérez Riveiro, 180 D.P.R. 193 (2010), y analizar si los hechos particulares de autos ameritan que censuremos *810 enérgicamente a un abogado cuya conducta como notario infringió la Regla 5 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV.
I
El 27 de febrero de 1991, el Sr. Miguel Ángel Cancel Rosado suscribió un contrato de arrendamiento con el Sr. José Antonio Cancel Pagán. Mediante ese contrato el señor Cancel Rosado le arrendó al señor Cancel Pagán una pro-piedad ubicada en el municipio de Cabo Rojo a razón de $150 mensuales. Diez años más tarde el señor Cancel Ro-sado le cursó una carta al señor Cancel Pagán anunciando un aumento de renta, a razón de $350 mensuales, el cual el señor Cancel Pagán incumplió. Así, luego de cursar varias misivas adicionales, que también fueron ignoradas, el se-ñor Cancel Rosado le expresó al señor Cancel Pagán que no deseaba renovar el contrato de arrendamiento. Le solicitó, además, que desalojara la propiedad arrendada.
Posteriormente, al ver que el señor Cancel Pagán in-cumplía con el pago de renta anunciado y con el desalojo solicitado, el 4 de octubre de 2001, el señor Cancel Rosado, asistido por su sobrina Lissa V. Cancel Pagán, presentó una demanda ante el Tribunal de Primera Instancia contra el señor Cancel Pagán sobre desahucio y falta de pago de cánones de arrendamiento. En la primera vista señalada el demandado compareció representado por el Ledo. Melvin I. Martínez Almodóvar,(1) quien solicitó que se le permitiera contestar la demanda y que se señalara una segunda vista.
El 31 de enero de 2002, el señor Cancel Pagán presentó su contestación. (2) En ella alegó que había adquirido la pro-piedad inmueble objeto del pleito de desahucio mediante *811 una escritura de compraventa otorgada por las partes el 9 de jimio de 2001.
Así las cosas, el 1 de febrero de 2002, se celebró una segunda vista. Ese día el señor Cancel Pagán también compareció representado por el licenciado Martínez Almodóvar. En esta vista las partes solicitaron que el pro-cedimiento se convirtiera en ordinario y que se consolidara con una acción de reivindicación y de nulidad de escritura de compraventa que el señor Cancel Rosado había presen-tado el 5 de diciembre de 2001. En esta segunda reclama-ción el señor Cancel Rosado adujo que el licenciado Martí-nez Almodóvar obvió dar fe de la entrega del precio de compraventa y que, en unión al señor Cancel Pagán, incu-rrió en conducta dolosa con el propósito de apropiarse ile-galmente del inmueble objeto del contrato de compra-venta.(3) Ambos pleitos fueron consolidados.
Luego de los trámites procesales de rigor, el 14 de fe-brero de 2006, el Tribunal de Primera Instancia dictó sentencia. En ella, aparte de desestimar sub silentio todas las alegaciones vertidas contra el licenciado Martínez Al-modóvar, el foro primario declaró “con lugar” las acciones de desahucio y de reivindicación como también decretó la nulidad de la escritura de compraventa por adolecer de consentimiento y causa. Consecuentemente, condenó al se-ñor Cancel Pagán al pago de las rentas atrasadas.
Inconformes con esta determinación, el señor Cancel Pagán acudió ante el Tribunal de Apelaciones, quien con-firmó el dictamen emitido por el foro primario. Inconforme aún, el señor Cancel Pagán presentó un recurso de certio-rari ante este Tribunal. Analizado ese recurso, el 10 de noviembre de 2006, emitimos una resolución en donde lo declaramos “no ha lugar” y, además, le referimos el caso a *812 la Directora de la Oficina de Inspección de Notarías (ODIN), para que investigara y rindiera un informe sobre la conducta profesional del licenciado Martínez Almodóvar.
En cumplimiento con nuestra encomienda, el 17 de agosto de 2007, la ODIN presentó un escrito intitulado “Comparecencia Especial”. En éste informó, entre otras co-sas, que de los documentos referidos se desprendía que, al momento de otorgarse la escritura de compraventa, el se-ñor Cancel Rosado se encontraba incapacitado y senil por padecer de Alzheimer. A esos efectos, la ODIN indicó que el licenciado Martínez Almodóvar actuó en común acuerdo con el señor Cancel Pagán para defraudar al señor Cancel Rosado.
El 13 de diciembre de 2007, emitimos otra resolución. En ella le referimos el asunto al Procurador General para que presentara la querella correspondiente contra el licen-ciado Martínez Almodóvar. Así pues, el 9 de septiembre de 2008, el Procurador General presentó una querella. En ella le imputó al licenciado Martínez Almodóvar la comisión de los cargos siguientes:

Primer Cargo

El licenciado Martínez Almodóvar violó la fe pública notarial al otorgar un documento público en donde uno de los otor-gantes estaba incapacitado de dar su consentimiento y en donde no hubo causa para el negocio de la compraventa.

Segundo Cargo

El licenciado Martínez Almodóvar violentó los principios enunciados en el Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX C.35, al otorgar un documento público ausente de consen-timiento y causa, por ende simulado. El consignar hechos que no son ciertos en el documento anulado por el Tribunal de Primera Instancia atenta contra el deber de sinceridad y hon-radez del notario.

Tercer Cargo

El licenciado Martínez Almodóvar violentó los principios contenidos en el Canon 38 de Ética Profesional, supra, al no esforzarse al máximo de su capacidad en la exaltación del honor y la dignidad de la profesión que practica. Esto al consig- *813 nar en un documento notarial hechos falsos. (Citas omitidas.) Querella, págs. 6-7.
Vista la querella sometida por el Procurador General y la contestación presentada por el licenciado Martínez Al-modóvar, el 30 de enero de 2009, emitimos otra resolución en la cual nombramos a la Leda. Eliadís Orsini Zayas como Comisionada Especial. Ello para que, en presencia de las partes, recibiera la prueba y nos rindiera un informe con sus determinaciones de hechos y las recomendaciones que estimara pertinente.
Luego de celebrar múltiples vistas sobre el asunto y una inspección ocular, el 1 de diciembre de 2009 la Comisio-nada Especial rindió su informe. En ese informe concluyó que no se había demostrado, mediante prueba clara, ro-busta y convincente, que el licenciado Martínez Almodóvar hubiese incurrido en la conducta impropia imputada en la querella.
Sin embargo, la Comisionada añadió que el licenciado Martínez Almodóvar sí había incurrido en conducta impro-pia distinta a la imputada, la cual era contraria a la Regla 5 del Reglamento Notarial de Puerto Rico, supra, y los Cá-nones 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. A esos efectos, expresó que del expediente de autos y de la prueba desfilada ante ella se desprendía clara-mente que el licenciado Martínez Almodóvar había compa-recido en dos ocasiones como representante legal del señor Cancel Pagán en los pleitos descritos, luego de fungir como notario y otorgar la escritura de compraventa objeto de ambos pleitos. Además, la Comisionada indicó que en la escritura pública se habían incluido hechos que no eran ciertos.
Posteriormente, el licenciado Martínez Almodóvar pre-sentó su contestación al informe de la Comisionada. En su contestación, el querellado aceptó en su totalidad el in-forme por entender que era “equilibrado, ponderado y ecuánime”. Por ello, contando con la comparecencia de am-bas partes, procedemos a resolver.
*814 II
Como principio rector del derecho notarial, todo notario está inexorablemente vinculado al estricto cumplimiento de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2001 et seq., y los cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Su inobservancia con una de estas fuentes de obligaciones y deberes implica —ineludiblemente— la acción disciplinaria correspondiente; no sólo en su función como notario, sino también como abogado. “Esto es así ya que en el notario, por su condición de abogado, se fun-den dos (2) facetas esenciales en la administración de la justicia.” In re Capestany Rodríguez, 148 D.P.R. 728, 733 (1999). La primera de ellas, la que surge de su condición como profesional del Derecho, lo instruye en la técnica jurídica y capacita para dar consejos y servir de guía a todo interesado. “La segunda faceta, la de notario, lo convierte en un funcionario público investido de autoridad y con capacidad autenticadora y legalizadora en el plano de las relaciones privadas.” Id. Además, esta segunda faceta impone a los actos que dicho notario “ve y oye —vidit et audit— una eficacia autenticadora cubierta con una presunción de veracidad, producto neto que parte del supuesto de un leal de los requisitos y las formalidades de ejercer con fidelidad su encomienda”. (Énfasis suprimido.) Id., págs. 733 — 734. Véanse, además: In re Colón Muñoz, 131 D.P.R. 121 (1992); In re Cruz Ramos, 127 D.P.R. 1005 (1991).
A. Fe pública notarial
El Art. 2 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. see. 2002, consagra el principio de la fe pública notarial. El artículo dispone lo siguiente:
El notario es el profesional de Derecho que ejerce una fun-ción pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos ex- *815 trajudiciales que ante él se realicen, sin perjuicio a lo dis-puesto en las leyes especiales. Es su función recibir e interpre-tar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle auto-ridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora de otorgamiento. 4 L.P.R.A. see. 2002.
La fe pública notarial de la cual están investidos todos los notarios constituye la espina dorsal de nuestro sistema notarial. In re Rivera Aponte, 169 D.P.R. 738, 741 (2006); In re Tejada Rivera 1,155 D.P.R. 175,180 (2001); In re Feliciano Ruiz, 117 D.P.R. 269, 275 (1986). Ésta le confiere al notario que la ejerce un carácter dual: “(A) en la esfera de los hechos, la exactitud de lo que el notario ve, oye o percibe por sus sentidos, y (B) en la esfera del Derecho, confiere autenticidad y fuerza probatoria a las declaraciones de voluntad de las partes en el instrumento público redactado conforme a su juicio sobre los preceptos del ordenamiento jurídico para la validez y eficacia del acto o contrato formalizado, y sobre la identidad y capacidad de las partes.” 4 L.P.R.A. Ap. XXIV, R. 2. Véanse, además: In re Cruz Ramos, 127 D.P.R. 1005 (1991); In re Cruz Cruz, 126 D.P.R. 448 (1990).
Más aún, por la importancia que tiene la fe pública notarial en el tráfico de los bienes jurídicos, “el notario tiene que ser en extremo cuidadoso y debe desempeñar su ministerio con esmero, diligencia y estricto celo profesional”. In re Rivera Vázquez, 155 D.P.R. 267, 277-278 (2001). Véase, además, In re González Maldonado, 152 D.P.R. 871 (2000). Ello, pues se presume que “un documento notarial avalado por la dación de fe de un notario cumple con todas las formalidades de ley y es legal, verdadero y legítimo. Además la dación de fe brinda confianza de que los hechos jurídicos y las circunstancias que acredita el notario fueron percibidos y comprobados con sus sentidos o ejecutados por él”. In re Rivera Aponte, supra, págs. 741- *816 742. Véase In re Feliciano Ruiz, supra, pág. 275. Véase, además, In re Vera Vélez, 148 D.P.R. 1, 7 (1999). Precisa-mente, es esta presunción de veracidad y legitimidad la que brinda certeza, garantía y eficacia al documento notarial.
Así pues, la fe pública notarial en nuestro sistema jurídico es de tan alta magnitud e importancia que “no es necesario que el notario falte a la verdad intencionalmente para que incurra en una violación a ella”. In re Rivera Vázquez, supra, pág. 278. Consecuentemente, “[e]l notario que [intencionalmente o no] falta a la verdad en el otorgamiento de un instrumento público no sólo quebranta la fe pública notarial, sino que socava la integridad de la profesión legal y viola su deber de ser sincero y honrado”, conforme a lo dispuesto en el Canon 35 del Código de Etica Profesional. Id., pág. 278. Véase, además, Feliciano v. Ross, 165 D.P.R. 649, 658 (2005), citando a P. Malavet Vega, Manual de Derecho Notarial Puertorriqueño, Santo Domingo, Ed. Corripio, 1988. Por ello, el notario siempre tiene que circunscribirse a la verdad y actuar de conformidad con la ley en todo momento. Id.
En cuanto a la obligación del notario de dar fe sobre la capacidad de los otorgantes, el Art. 15(e) de la Ley Notarial de Puerto Rico indica que la escritura pública debe contener “la fe expresa del notario ... de que a su juicio éstos tienen la capacidad legal necesaria para otorgar el acto o contrato de que se trata”. 4 L.P.R.A. sec. 2033(e). Así, en el descargo de su encomienda, el notario tiene el deber de calificar la capacidad de las partes. “La calificación de la capacidad viene impuesta por la naturaleza y la finalidad del instrumento público: se trata de un requisito que conceptual y lógicamente viene impuesto ab initio para conseguir la eficacia del documento y del acto documentado”. In re Feliciano Ruiz, supra, pág. 275, citando a E. Giménez-Arnau, Derecho Notarial, Pamplona, Ed. Univ. Navarra, 1976, pág. 527.
*817 La capacidad de los otorgantes guarda correspondencia lógica con el consentimiento de los contratantes, requisito sine qua non de los contratos. La regla general es que su existencia surja con la comparecencia y presencia de la persona ante el notario, la excepción es el mandato o poder. In re Feliciano Ruiz, supra, pág. 276. A esos efectos, la profesora Torres Peralta, en su obra sobre el Derecho Notarial Puertorriqueño, enuncia lo siguiente:
Es indispensable dar fe de la capacidad legal de los otorgan-tes, como requisito para proceder al otorgamiento y autoriza-ción de un instrumento publico. La Ley requiere que el Nota-rio haga constar en la escritura que, a su juicio, los otorgantes tienen la capacidad legal necesaria para el otorgamiento del instrumento. Tal aseveración ha de estar basada en un juicio informado y sabio, no en un acto caprichoso e infundado de parte del Notario.
La aseveración que a ese efecto se haga en la escritura pú-blica estará basada en los dichos de cada uno de los otorgantes El Notario, no obstante, tomará en cuenta el conocimiento que tiene cada otorgante, así como su capacidad de observación y de su percepción personal y si necesario, la investigación que debe efectuarse en las circunstancias. Este requisito se ex-tiende, de igual manera, al compareciente representante en una escritura pública en que dicho otorgante comparezca como mandatario, agente, apoderado o comisionista y en toda otra capacidad representativa. (Énfasis suplido.) S. Torres Peralta, El Derecho Notarial Puertorriqueño, ed. especial, San Juan, Pubs. STP, 1995, Sec. 8.27.
En Feliciano v. Ross, supra, pág. 658, expresamos que “[e]s deber del notario que autoriza el otorgamiento de una escritura ... hacer las averiguaciones mínimas que requieren las normas de la profesión”. Citando a In re Peña Clos, 135 D.P.R. 590, 601 (1994). En ese sentido, en In re Davidson Lampón, 159 D.P.R. 448, 461 (2003), indicamos que debido a que “la función del notario trasciende la de un autómata legalizador de firmas y penetra al campo de la legalidad de la transacción que ante él se concreta” (énfasis suprimido), al autorizar una escritura el notario debe: “(i) indagar la voluntad de los otorgantes; (ii) formular la voluntad indagada; (iii) investigar ciertos hechos y datos de los que depende la eficacia o validez del negocio, y (iv) dar- *818 les a los otorgantes las informaciones, aclaraciones y ad-vertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo”.(4) (Enfasis suplido.) Véanse, además: Chévere v. Cátala, 115 D.P.R. 432, 438 (1984); Cintrón Ramos v. Registrador, 144 D.P.R. 91 (1997).
B. Canon 35
El Canon 35 del Código de Ética Profesional, supra, impone un deber general de sinceridad y honradez sobre todos los abogados admitidos a practicar la profesión legal. In re Irizarry Vega, 176 D.P.R. 241 (2009); In re Padilla Rodríguez, 145 D.P.R. 536 (1998); In re Rivera y Masini Soler, 134 D.P.R. 823 (1993). A esos efectos, este canon indica lo siguiente:
La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en relaciones con sus compañeros debe ser sincera y honrada.
No es sincero ni honrado el utilizar medios que sean incon-sistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.
El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o fa-cilitar la desaparición de evidencia testifical en un caso tam-bién es altamente reprochable. 4 L.P.R.A. Ap. IX, C. 35.
Como es sabido, el deber general contenido en el Canon 35 del Código de Ética Profesional, supra, se exige en aras de preservar el honor y la dignidad de la profesión, ya que el compromiso del abogado con la verdad es incon- *819 dicional e ineludible. In re Irizarry Vega, supra, pág. 5; In re Fernández de Ruiz, 167 D.P.R. 661 (2006). Conforme a ello, hemos expresado que “[l]a verdad es un atributo inseparable del ser abogado, y sin ésta, la profesión jurídica no podría justificar su existencia”. In re Irizarry Vega, supra, pág. 245. Véase In re Buso Aboy, 166 D.P.R. 49 (2005).
En específico, en cuanto a la práctica notarial se refiere, en In re Tejada Rivera I, supra, pág. 182, afirmamos “que cualquier hecho aseverado en un instrumento público por un notario que no concuerde con la verdad constituye una violación al Canon 35 del Código de Ética Profesional, supra, independientemente de si hubo intención de faltar a la verdad”. (Énfasis suplido.) Véanse, además: In re Astado Caraballo, 149 D.P.R. 790 (1999); In re Machargo Barreras, 161 D.P.R. 364, 372 (2004).
C. Canon 38
El Canon 38 del Código de Ética Profesional, supra, impone sobre todos los abogados admitidos a ejercer la profesión legal el deber de esforzarse al máximo para exaltar el honor y la dignidad de su profesión. En lo pertinente, ese canon indica que todo “abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta impropia ...”. íd. In re Colón Ramery, 133 D.P.R. 555, 562 (1993); In re Meléndez Pérez, 104 D.P.R. 770, 772 esc. 1 (1976); In re Cando Sifre, 106 D.P.R. 386, 398-399 (1977); In re Rojas Lugo, 114 D.P.R. 687, 691 (1983); In re Roldán Figueroa, 106 D.P.R. 4 (1977).
Cónsono con lo anterior, hemos resuelto que “[l]a responsabilidad moral y ética que rigen nuestra ilustre profesión, obliga a todo abogado a examinar su comportamiento continuamente”. In re Rodríguez Vázquez, 176 D.P.R. 168, 177 (2009). En ese sentido, reiteramos con ím-petu que “los abogados son el espejo donde se refleja la imagen de la profesión. Por tal razón, éstos deben actuar *820 con el más escrupuloso sentido de responsabilidad que im-pone la función social que ejercen”. Id., pág. 177. Véase In re Quiñones Ayala, 165 D.P.R. 138 (2005).
D. “Quantum” de la prueba
En In re Caratini Alvarado, 153 D.P.R. 575, 585 (2001) (adoptando el criterio establecido en P.P.D. v. Admor. Gen. de Elecciones, 111 D.P.R. 199, 227 (1981)), resolvimos que el quantum de prueba requerido en los procesos disciplinarios es la “ ‘prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas’ ”. (Enfasis suprimido.) Así, aunque “el referido estándar de prueba no es susceptible de una definición precisa, la prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en el juzgador de hechos una convicción duradera de que las contenciones tácticas son altamente probables”. In re Rodríguez Mercado, 165 D.P.R. 630, 641 (2005). Véase Colorado v. New Mexico, 467 U.S. 310, 316 (1984). Véase, además, E.W. Cleary, McCormick on Evidence 5th, Minnesota, Ed. West Pub. Co., 1999, Vol. 2, Sec. 340, pág. 425.
Conforme a lo anterior, hemos resuelto que en los procedimientos disciplinarios la carga probatoria requerida es más acuciosa que el quantum de prueba requerido en los procedimientos civiles ordinarios, “ya que en estos procesos está en juego el título de un abogado y, por ende, su derecho fundamental a ganarse su sustento”. In re Rodríguez Mercado, supra, pág. 640, citando a In re Caratini Alvarado, supra, pág. 585. Por ello, podemos concluir que el estándar de la prueba clara, robusta y convincente es más alto y sólido que el de la preponderancia de la prueba, pero menos exigente y riguroso que el de prueba más allá de la duda razonable. In re Rodríguez Mercado, supra, pág. 640. Véase, además, In re Soto López, 135 D.P.R. 642, (1994).
*821 E. Debido proceso de ley
El debido proceso de ley, en su vertiente proce sal, le impone al Estado la obligación de garantizar que la interferencia con el interés propietario o libertario del individuo se realice mediante un procedimiento justo y equitativo que respete la dignidad de los individuos. Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 887-888 (1993). Los abogados tienen un interés propietario en el ejercicio de la profesión legal. In re Ríos Ríos, 175 D.P.R. 57 (2008). Véase, además, In re Ruffalo, 390 U.S. 544, 550 (1968). Por ello, los abogados son acreedores de las garantías de un debido proceso de ley en aquellos procedimientos disciplinarios en que esté en juego su licencia. íd.
Como es sabido, las exigencias mínimas del debido pro-ceso de ley incluyen ser notificado adecuadamente de los cargos en su contra, la oportunidad de ser oído y el derecho a contrainterrogar y a examinar la prueba documental y material presentada por la parte contraria. In re Ríos Ríos, supra, pág. 20; Salvá Santiago v. Torres Padró, 171 D.P.R. 332, 343 (2007). Véase, además, Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, pág. 889.
Según lo anterior, la Regla 14(f) del Reglamento del Tribunal Supremo reconoce un procedimiento de notificación al abogado cuando se presenta una querella en su contra.(5) 4 L.P.R.A. Ap. XXI-A. Cuando ello ocurre, el Secretario entra la querella en el libro de presentaciones correspondiente e inmediatamente expide un mandamiento al abogado involucrado. 4 L.P.R.A. Ap. XXI-A, R. 14. En éste, se requiere al abogado que conteste la querella en los quince días de su notificación. El alguacil procede entonces a notificar la querella y el mandamiento. Además, cuando no es posible notificar personalmente al querellado, el al- *822 guacil tiene el deber de informar tal hecho al Tribunal. íd. En ese caso, el Tribunal puede “ordenar que se le notifique dejando los documentos en su oficina, durante horas regu-lares de trabajo, en un sobre con su debida dirección”. íd. Cuando no se puede notificar de esta forma, el Secretario notifica al abogado por correo certificado con acuse de re-cibo a la dirección que obra en el registro de abogados del Tribunal. Esa notificación es suficiente para todos los efec-tos del Reglamento de este Tribunal aunque la carta sea devuelta.(6) íd.
Por su parte, en In re Ruffalo, supra, el Tribunal Supremo de Estados Unidos reconoció, expresamente, que durante los procedimientos disciplinarios un abogado tiene el derecho constitucional al debido proceso de ley. En esta ocasión se le imputaron doce cargos disciplinarios al abo-gado mediante querella. Sin embargo, al tercer día de la vista disciplinaria la Junta de Comisionados sobre Quejas y Disciplina de Ohio añadió un cargo número trece, funda-mentado, exclusivamente, en información obtenida du-rante la vista evidenciaría. íd., pág. 546. El abogado fue suspendido de la práctica legal debido, en parte, al cargo número trece.
El Tribunal Supremo de Estados Unidos reconoció que los procedimientos disciplinarios instados contra los aboga-dos no son de naturaleza civil ni penal, sino que se trata de procedimientos de naturaleza cuasi penal. In re Ruffalo, supra, pág. 551. Así, luego de evaluar detenidamente las circunstancias del caso, concluyó que el abogado quere-llado no fue notificado adecuadamente del nuevo cargo y que, como parte del debido proceso de ley, el abogado tenía derecho a una notificación adecuada de ese cargo el cual fue identificado luego de iniciado el trámite disciplinario. íd.
*823 En In re Roca Rosselli, 164 D.P.R. 380 (2005), sin embargo, adoptamos una postura distinta. En aquella oca-sión, el Procurador General presentó una querella contra un abogado para imputarle, únicamente, haber violado los principios de diligencia e información contenidos en el Canon 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. Así, nombramos un comisionado especial quien celebró una vista para dilucidar la querella.
Luego de celebrada la vista en ese caso, el comisionado especial sometió su informe. Concluyó que “a pesar de que el Procurador General tan sólo imputó al licenciado Roca una violación al Canon 19 [sic], [4 L.P.R.A. Ap. IX], la con-ducta imputada también [configuró] prohibiciones al Canon 18 [sic]”. Ello, debido a que el cargo presentado por el Procurador “quedó enmendado por la prueba presentada por el propio querellado”. In re Roca Rosselli, supra, págs. 385-386.
Evaluadas las circunstancias ante nos, acogimos los planteamientos del comisionado especial y resolvimos que el abogado querellado incurrió en una conducta impropia contraria a los Cánones 18 y 19 del Código de Ética Profe-sional, supra. Ello, aun cuando la violación al Canon 19, supra, no fue imputada en la querella, sino que surgió de la prueba presentada en la vista celebrada por el Comisio-nado E special. (7) Sin embargo, en aquel entonces no discu-timos si ese proceder era contrario al debido proceso de ley y a la norma pautada en In re Ruffalo, supra.
Posteriormente, en In re Marini Román, 165 D.P.R. 801 (2005), resolvimos que el querellado incurrió en conducta impropia contraria a los dos cargos imputados en la quere-lla, los cuales estuvieron fundamentados en el “Criterio General” de los deberes de los abogados para con los tribu- *824 nales y el Canon 35, supra. Además, indicamos que esa conducta también era contraria al Canon 18, supra, a pe-sar que esta violación no había sido imputada en la quere-lla presentada por el Procurador General, sino que surgió de la prueba desfilada ante la Comisionada Especial. En apoyo a nuestra conclusión citamos la norma esbozada en In re Roca Rosselli, supra. In re Marini Román, supra, pág. 812.(8)
Ahora bien, recientemente, en In re Pérez Riveiro, supra, revocamos la norma adoptada In re Roca Roselli, supra. Al así hacerlo, enfatizamos que “la práctica de enmendar tácitamente la querella, a base de la prueba presentada, para sancionar a un abogado por violaciones al Código de Etica Profesional que no fueron imputadas en la querella es incompatible con la naturaleza de los procedimientos disciplinarios de los abogados y viola el debido proceso de ley”. In re Pérez Riveiro, supra, pág. 200.
Como consecuencia, entendimos que no procedía impo-ner sanciones disciplinarias al querellado por los cargos imputados que surgieron durante el trámite procesal de la querella, pues ello implicaba “negarle la oportunidad que [el querellado] por derecho tiene a preparar una defensa adecuada e impedirle, asimismo, velar por su sustento”. In re Pérez Riveiro, supra, pág. 201. Aclaramos, sin embargo, que nada de ello impedía que, de considerarlo apropiado, ordenáramos al Procurador General investigar la nueva información recibida por el Comisionado para determinar si debe presentarse” una nueva queja que inicie un proce-dimiento disciplinario separado, en el cual el abogado tenga la oportunidad de defenderse y traer prueba a su favor con relación a la conducta distinta a la considerada originalmente”. Id., pág. 201.
No obstante lo anterior, la norma esbozada en In re Pérez Riveiro, supra, no debe ser catalogada como irrestricta. *825 “[El] debido proceso de ley se satisface siempre que se le provea al abogado querellado la oportunidad de responder y defenderse de los cargos imputados y notificados, así como de las teorías en las que se fundamenten”. (Énfasis suplido.) íd., pág. 200. Véase Zauderer v. Office of Disc. Counsel, 471 U.S. 626, 654-655 (1985). Así, aclaramos que cuando del expediente bajo estudio surja que —en cuanto a la conducta impropia identificada luego de iniciado el pro-cedimiento disciplinario— al abogado querellado se le ha: (1) notificado adecuadamente de la conducta impropia adi-cional; (2) brindado la oportunidad de presentar prueba a su favor; (3) permitido examinar la prueba presentada en su contra, y (4) contrainterrogar los testigos presentados por la parte contraria, el Tribunal podrá, si lo estima apro-piado, evaluar y atender esas alegaciones adicionales. Sólo así protegeremos efectivamente las garantías constitucio-nales del abogado-querellado y no se menoscabará su opor-tunidad de preparar adecuadamente su defensa ni se le impedirá velar por su sustento.
En otras palabras, si durante el trámite de un procedimiento disciplinario se identifica conducta impropia adicional a la imputada ésta no podrá ser dirimida en ese mismo procedimiento disciplinario. In re Pérez Riveiro, supra. En estas instancias, como norma general, el Tribunal deberá ordenarle al Procurador General investigar la nueva conducta para que determine si debe presentarse una nueva queja que inicie un nuevo procedimiento disciplinario, separado y distinto al procedimiento en donde la conducta adicional impropia fue identificada. Así, el abogado querellado tendrá la oportunidad de defenderse y traer prueba a su favor con relación a la conducta impropia adicional.
Ahora bien, a modo de excepción, en las instancias en donde el expediente ante la consideración del Tribunal re-fleje que, en cuanto a la conducta impropia adicional, se le han salvaguardado al querellado todas las garantías que *826 emanan del debido proceso de ley, el Tribunal podrá —si lo estima apropiado— evaluar y atender esa conducta adicio-nal en el mismo procedimiento disciplinario, sin necesidad de referirla al procurador general. Sólo así protegeremos efectivamente las garantías constitucionales del abogado querellado y no se menoscabará su oportunidad de prepa-rar adecuadamente su defensa ni se le impedirá velar por su sustento.
F. Regla 5 del Reglamento Notarial de Puerto Rico
Como norma general, la Regla 5 del Reglamento Notarial de Puerto Rico, supra, establece que los notarios están impedidos de representar legalmente a cualquiera de las partes otorgantes en un pleito posterior mediante el cual se reclamen las prestaciones contenidas en el documento otorgado ante ese notario. En lo pertinente al caso que nos ocupa, esta regla indica lo siguiente:
La práctica de la profesión de abogado puede ser en algunas ocasiones incompatible con la práctica de la notaría.

El notario autorizante de un documento público está impe-dido de actuar posteriormente como abogado de una de las partes otorgantes para exigir en un litigio contencioso las con-traprestaciones a que se haya obligado cualquier otra parte en el documento otorgado ante él.

El notario está impedido de representar como abogado a un cliente en la litigación contenciosa y, a la vez, servir de notario en el mismo caso por el posible conflicto de intereses o incom-patibilidades que puedan dimanar del mismo. (Énfasis suplido.) Id.
La prohibición establecida por la Regla 5 del Regla-mento Notarial de Puerto Rico, supra, no debe ser tomada livianamente. Su propósito es, entre otros, proteger la apa-riencia profesional de los notarios y evitar que su conducta como depositario de la fe pública notarial sea maculada por escepticismos de impropiedad y desconfianza. In re Rojas Lugo, 114 D.P.R. 687 (1983); In re Colón Ramery, 133 D.P.R. 555 (1995).
En armonía con lo anterior, en In re Colón Ramery, supra, pág. 567, resolvimos que “[u]n abogado-notario que *827 reclama judicialmente en representación de una de las par-tes otorgantes de un documento, para exigir la contrapres-tación a la que se obligó la otra parte en el documento, da la falsa impresión de que siempre estuvo parcializado con la parte en representación de la cual reclama”. Añadimos que de permitirse tal práctica estaríamos ocasionándole un grave daño a la institución del notariado, a la fe pública notarial y, sobre todo, a la confianza que ha sido depositada en la profesión. Id.
Posteriormente, en In re Colón Ramery, 138 D.P.R. 793, 798 (1995) (en reconsideración), aclaramos que la prohibi-ción esbozada no aplica a las acciones ex parte, a menos que ello esté expresamente prohibido por ley o doctrina jurisprudencial. Añadimos que esa normativa era una “consecuencia lógica del hecho de que, por su carácter no contencioso, en dichos procedimientos no existe la aparien-cia de parcialidad impropia”, pues “los procedimientos ex parte tienen como propósito dar validez jurídica a actos y manifestaciones consensúales de la voluntad privada”. íd. Véase E. Escobar De la Riva, Tratado de Derecho Notarial, Alicante, Ed. Marfil, 1957, págs. 27-28. De igual forma, y por fundamentos similares, en In re Matos Bonet, 153 D.P.R. 296, 301 (2001), resolvimos que los notarios están impedidos de otorgar los documentos públicos relativos a propiedades que sean objeto de los litigios en los cuales participan como abogados.
III
Como mencionáramos, en la querella presentada por el Procurador General contra el licenciado Martínez Almodó-var se le imputó incurrir en conducta impropia constitu-tiva de tres cargos disciplinarios. Ante esta situación, la Comisionada Especial rindió un informe y concluyó que no se presentó prueba clara, robusta y convincente que sus-tentara la conducta profesional impropia imputada. Le asiste la razón. Veamos.
En cuanto al primer cargo, violación de la fe pública *828 notarial debido a que el señor Cancel Rosado estaba inca-pacitado para otorgar la escritura de compraventa, surge del expediente de autos que el 25 de abril de 2001, tan sólo cuarenta y cinco días antes de otorgar la escritura de com-praventa, el señor Cancel Rosado otorgó un testamento abierto ante la notaría Mónica Alpi Figueroa. Este no ha sido impugnado ni anulado.
A esos efectos, durante las vistas celebradas por la Co-misionada Especial, la licenciada Alpi Figueroa testificó que todas las gestiones para otorgar el testamento abierto fueron diligenciadas por el propio señor Cancel Rosado. Añadió que a su juicio no tenía la menor duda de que él estaba en plena capacidad, sin importar que usaba silla de ruedas. Ello, porque, a parte de conocerlo personalmente, durante el otorgamiento del testamento ella le hizo pre-guntas sobre temas y asuntos del presente y pasado, a las cuales el señor Cancel Rosado respondió correctamente.
Igualmente, surge del expediente que días antes de otorgarse la escritura de compraventa el licenciado Martí-nez Almodóvar acudió a la residencia del señor Cancel Ro-sado para afinar los pormenores de la compraventa y pudo percatarse de su capacidad. Así, nos indica la Comisionada Especial, que el querellado observó, mientras el señor Cancel Rosado leía un viejo periódico regional de La Parguera, como éste le comentaba con gran precisión sobre varios errores contenidos en el artículo, el cual trataba sobre el origen de la familia Cancel del Poblado. En específico, el señor Cancel Rosado le indicó al querellado, entre otras cosas, que el artículo estaba errado porque indicaba que la familia Cancel había llegado al poblado como pescadores, cuando la realidad habían llegado como cuidadores de cerdos. Además, a preguntas del licenciado Martínez Almo-dóvar, el señor Cancel Rosado expresó que tenía interés en venderle la propiedad al señor Cancel Pagán, porque no tenía hijos y éste había ayudado mucho a sus sobrinos.
Lo anterior, en unión a la totalidad de la prueba testifical y documental examinada, nos lleva a la misma conclu-sión alcanzada por la Comisionada Especial. Durante el *829 procedimiento disciplinario no se presentó prueba clara, robusta y convincente tendente a demostrar la conducta impropia imputada en el primer cargo. El licenciado Mar-tínez Almodóvar no estaba obligado a efectuar una inves-tigación exhaustiva y pormenorizada sobre la capacidad y el trasfondo mental del señor Cancel Rosado. Cintrón Ramos v. Registrador, supra; In re Caratini Alvarado, supra, pág. 583; In re Machargo Barreras, supra, págs. 370-371; Feliciano v. Ross, supra, págs. 658-659. Más bien, de un análisis integral de la jurisprudencia señalada, el quere-llado —como custodio de la fe pública notarial— estaba obligado a hacer las averiguaciones mínimas necesarias que requieren las normas de la profesión para quedar ple-namente convencido de la capacidad de los otorgantes. En-tendemos, pues, que el licenciado Martínez Almodóvar, al actuar como lo hizo y presentarse días antes en la casa del señor Cancel Rosado para detallar los pormenores de la escritura de compraventa y corroborar su capacidad, no violó la fe pública notarial. Su juicio y dación de fe sobre la capacidad del señor Cancel Rosado fue ejercida celosamente. Véase, además, la Regla 32(5) del Regla-mento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV.
A igual conclusión llegamos en cuanto a la conducta pro-fesional impropia imputada en el segundo y tercer cargo. Ambos cargos gravitan sobre las alegaciones de fraude in-tencional vertidas por el señor Cancel Rosado en la de-manda sobre reivindicación y nulidad de escritura de com-praventa contra el licenciado Martínez Almodóvar. Estas fueron desestimadas sub silentio en la sentencia dictada por el Tribunal de Primera Instancia, la cual fue confir-mada posteriormente por el Tribunal de Apelaciones.
Sin embargo, lo anterior no dispone completamente del asunto disciplinario ante nuestra consideración. Resta con-siderar si procede o no imponerle sanciones disciplinarias al licenciado Martínez Almodóvar por las alegadas viola-ciones a la Regla 5 del Reglamento Notarial de Puerto Rico, supra, y a los Cánones 35 y 38 del Código de Etica Profesional, supra, identificadas durante el trámite disci- *830 plinario instado en su contra, y si esa imposición es contra-ria al debido proceso de ley.
De ordinario, conforme la norma pautada en In re Pérez Riveiro, supra, conducta profesional impropia identificada durante el transcurso de un procedimiento disciplinario no debe ser objeto de sanción disciplinaria en ese mismo procedimiento. Ahora bien, las circunstancias particulares del caso de autos ameritan que apliquemos la excepción esbozada.(9) Nos explicamos.
Como hemos mencionado, durante el procedimiento dis-ciplinario de autos la Comisionada Especial identificó una conducta impropia adicional a la imputada en la querella, la cual se aduce que es contraria a la Regla 5 del Regla-mento Notarial de Puerto Rico, supra, y a los Cánones 35 y 38 del Código de Etica Profesional, supra. A esos efectos, la Comisionada Especial aclaró en su informe, en cuanto a la conducta impropia adicional, que las garantías constitucio-nales que cobijan al querellado fueron debidamente salva-guardadas y que durante el transcurso del procedimiento disciplinario al querellado se le informó adecuadamente sobre el hallazgo de esa conducta adicional y se le concedió la oportunidad de expresarse, de presentar prueba a su favor y de impugnar la prueba ofrecida en su contra. Véase el Informe de la Comisionada Especial, págs. 34-35.
Más aún, del expediente de autos surge que el propio querellado aceptó el informe de la Comisionada Especial y lo catalogó como un informe “equilibrado, ponderado y ecuánime” y que optó por no tomar acción alguna en cuanto la citada conducta adicional. Por ello, y debido a que du-rante todo el transcurso del procedimiento disciplinario de autos se le han protegido al querellado sus garantías cons- *831 titucionales, procedemos a atender las alegaciones de con-ducta impropia adicional identificada por la Comisionada Especial. Se configura en esta ocasión la excepción mencionada.
En cuanto a la conducta contraria a la Regla 5 del Re-glamento Notarial de Puerto Rico, supra, se deduce clara-mente del expediente de autos que el licenciado Martínez Almodóvar, luego de otorgar la escritura de compra-venta, compareció en dos ocasiones distintas —16 de no-viembre de 2001 y 1 de febrero de 2002— como represen-tante legal del señor Cancel Pagan en un pleito presentado por el señor Cancel Rosado para exigir el cumplimiento de las prestaciones convenidas en la escritura. En otras pala-bras, el querellado representó legalmente al señor Cancel Pagán en un litigio contencioso en el cual se exigía el cum-plimiento de las contraprestaciones convenidas en una es-critura de compraventa otorgada ante él. Ello constituye urna clara violación a lo dispuesto en la Regla 5 del Regla-mento Notarial de Puerto Rico, supra, y su jurisprudencia interpretativa. In re Colón Ramery, supra; In re Colón Ramery, supra (en reconsideración).
Ahora bien, en cuanto a la conducta impropia adicional contraria a los Cánones 35 y 38, supra, la Comisionada Especial expresó en su informe que de la evidencia docu-mental se desprende que en la escritura de compraventa otorgada por el licenciado Martínez Almodóvar no se espe-cificó que la cuantía del negocio jurídico había sido entre-gada mediante cheque de gerente, sino que sólo se expresó que fue entregada mediante moneda de curso legal. Tal proceder, nos sugiere la Comisionada Especial, constituye una violación a los Cánones 35 y 38 del Código de Ética Profesional, supra. No le asiste la razón.
Un examen integral y detenido de nuestro ordena-miento notarial y su jurisprudencia interpretativa revela que los notarios están obligados a plasmar íntegramente la voluntad y los pactos de los otorgantes en las estipulacio-nes de la escritura de compraventa que se otorgan ante él. Véase Malavet Vega, op. cit., pág. 170. Así, los notarios *832 están obligados a consignar, entre otras cosas, el precio de venta pactado entre las partes otorgantes y la forma como esa cuantía es satisfecha. íd. Colegimos que basta con in-dicar que el precio pactado en la escritura de compraventa fue satisfecho mediante moneda de curso legal, que es el equivalente a la moneda de Estados Unidos de América. Véase Torres, Torres v. Torres et al., 179 D.P.R. 481 (2010).
IV
Finalmente, en numerosas ocasiones hemos ex-presado que al determinar una sanción disciplinaria se tomará en cuenta la reputación del abogado querellado en la comunidad, su historial profesional previo, si se trata de su primer procedimiento disciplinario, si el querellado ha aceptado los cargos imputados, su sincero arrepentimiento, si se trata de una conducta aislada, si actuó con ánimo de lucro y cualesquiera otras consideraciones que puedan servir como atenuantes o agravantes según los hechos particulares de cada caso. In re Bryan, Vargas, 150 D.P.R. 1 (2000); In re Quiñones Ayala, 165 D.P.R. 138 (2005).
Vemos, pues, que surge del expediente de autos que éste ha sido el primer procedimiento disciplinario que se ha presentado contra el licenciado Martínez Almodóvar du-rante los veinte años que lleva ejerciendo la profesión legal. Además, hemos notado que el querellado goza de buena reputación en la comunidad donde reside y entre sus compañeros profesionales.
Por lo tanto, en esta ocasión limitaremos nuestra san-ción disciplinaria a una censura enérgica. La conducta des-plegada por el licenciado Martínez Almodóvar infringió la Regla 5 del Reglamento Notarial de Puerto Rico, supra. No obstante, le apercibimos al licenciado Martínez Almodóvar que de incurrir en conducta impropia en el futuro podrá ser sancionado de forma más severa.
*833 V
Por los fundamentos expuestos, censuramos enérgica-mente al Ledo. Melvin I. Martínez Almodóvar por haber incurrido en conducta impropia contraria a la Regla 5 del Reglamento Notarial de Puerto Rico, supra. Le apercibimos que de incurrir nuevamente en conducta profesional impro-pia podrá ser sancionado de forma más severa.

Se dictará sentencia de conformidad.

La Jueza Asociada Señora Fiol Matta disintió con una opinión escrita. La Juez Asociada Señora Rodríguez Rodrí-guez disintió sin opinión escrita.

 El licenciado Martínez Almodóvar prestó juramento como abogado el 2 de febrero de 1990, y como notario el 10 de mayo de Í990.

 Aun cuando no surge del expediente moción de renuncia alguna, esta contes-tación fue presentada por el Ledo. Nelson Vélez Lugo.

 En específico, en esta reclamación sobre reivindicación y nulidad de contrato, se incluyó también como codemandado al licenciado Martínez Almodóvar. En su contra se alegó que al otorgar la escritura de compraventa, objeto de ambos pleitos, obvió dar fe del precio de compraventa y que, junto con el codemandado señor Cancel Pagán, incurrió en conducta dolosa, cuyo fin era apropiarse ilegalmente del inmueble objeto del contrato de compraventa.

 Sobre la obligación del notario de investigar los antecedentes regístrales del negocio jurídico que autoriza. Véanse: Chévere v. Cátala, 115 D.P.R. 432, 442-443 (1984), citando a P. Ávila Álvarez, Estudios de Derecho Notarial, 4ta ed., Madrid, Ed. Montecorvo, 1973, págs. 402-403; In re Ramos Meléndez y Cabiya Ortiz, 120 D.P.R. 796 (1988).

 El inciso (j) de la Regla 14 del Reglamento del Tribunal Supremo también reconoce que la parte querellada tendrá el derecho a: confrontar a los testigos en su contra durante la vista; contrainterrogarlos; examinar prueba documental o material que se presente en su contra; presentar a testigos, y presentar prueba documen-tal y material a su favor, entre otros. 4 L.P.R.A. Ap. XXI-A.

 íd. La Regla 14(g) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, dispone que las querellas presentadas por el Procurador General y por el Colegio de Abogados de Puerto Rico, deben cumplir también con el mencionado pro-ceso de notificación.

 El Juez Asociado Señor Rivera Pérez disintió sin opinión escrita, pero ex-presó que no era procedente disciplinar al querellado por la violación al Canon 19, supra, pues no se presentó cargo alguno por el Procurador General “y porque, por imperativo del debido proceso de ley, estamos impedidos de hacerlo”. In re Roca Rosselli, 164 D.P.R. 380, 389 (2005).

 Los Jueces Asociados Señores Rivera Pérez y Puster Berlingeri no intervinieron. In re Marini Román, 165 D.P.R. 801, 817 (2005).

 Nos llama la atención que en la opinión disidente emitida por nuestra com-pañera Jueza Asociada Señora Fiol Matta no se haya mencionado referencia alguna sobre la circunstancia medular que movió a este Tribunal a pautar y aplicar la excepción mencionada: el querellado Martínez Almodóvar no impugnó de forma al-guna el informe rendido por la Comisionada Especial; por el contrario, lo catalogó como un informe equilibrado, ponderado y ecuánime. Ello, en unión a los hallazgos y las conclusiones de la Comisionada Especial, inclinó la balanza a favor del resultado aquí alcanzado.