EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:

   Hiram Amundaray Rivera | Queja

2004 TSPR 191

163 DPR _____ |

Número del Caso: TS-8348

Fecha: 12 de noviembre de 2004

Oficina de Inspección de Notarías:
                            Lcda. Carmen H. Carlos
                            Directora

Abogado del Querellado:
                    Por Derecho Propio


Materia: Conducta Profesional
        (La suspensión será efectiva el 30 de noviembre     de
        2004 fecha en que se le notificó al abogado de su
        suspensión inmediata.)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Hiram Amundaray Rivera

TS-8348

PER CURIAM

San Juan, Puerto Rico, a 12 de noviembre de 2004

El 20 de noviembre de 2003 la Lcda. Carmen H. Carlos, Directora de la Oficina de Inspección de Notarías (O.D.I.N.), presentó ante este Tribunal un escrito titulado "Solicitud de Incautación de Protocolos" donde nos alertó sobre el estado de la obra notarial del Lcdo. Hiram Amundaray Rivera. En específico, la licenciada Carlos nos informó que una inspección de la obra notarial de este abogado --la cual se extendió por un periodo de 4 años-- reflejaba <u>serias deficiencias</u> en su protocolo de 1993, consistentes en no haberse adherido los sellos de rentas internas ni el impuesto notarial en los últimos dos tomos del mismo. Asimismo, nos informó que los protocolos correspondientes

a los años 1994, 1995, 1996 y 1997 no pudieron ser inspeccionados ya que los mismos no habían sido encuadernados.[1] La licenciada Carlos expresó su preocupación en torno a la integridad y seguridad de los instrumentos públicos autorizados durante estos años, ya que según informó los mismos se encontraban almacenados en diversas cajas que estaban dispersas por diferentes lugares de un edificio dedicado a la venta de automóviles.

Mediante Resolución a esos efectos, el 16 de enero de 2004 ordenamos la incautación de los protocolos del licenciado Amundaray Rivera. Además, le concedimos quince (15) días al referido letrado para que mostrara causa por la cual no debía ser suspendido del ejercicio de la notaría. En su comparecencia el licenciado Amundaray admitió las deficiencias identificadas y nos suplicó que le permitiéramos trabajar con la O.D.I.N. para subsanar las faltas advertidas y recuperar sus protocolo.

Así las cosas, el 21 de abril de 2004 compareció nuevamente ante nos la Directora de O.D.I.N., esta vez mediante un escrito titulado "Informe Parcial Sobre Estado de Obra Notarial Incautada". En el mismo, la licenciada Carlos nos informó que el licenciado Amundaray no había corregido ninguna de las deficiencias señaladas en la inspección de su obra notarial. Según explicó, se trata de

---

[1] Ello a pesar de los múltiples requerimientos hechos al Notario por parte de la Oficina de Inspección de Notarías para que procediera a así hacerlo y para que corrigiera las otras deficiencias señaladas.

una obra notarial voluminosa con escrituras públicas sin encuadernar y sin secuencia numérica. Las <u>faltas identificadas en la inspección</u> fueron resumidas por la licenciada Carlos del siguiente modo:

    i) falta de encuadernación de los protocolos correspondientes a los años 1994, 1995, 1996 y 1997 para un total de 1,191 instrumentos públicos sin encuadernar;

    ii) no consta el número de folio en la parte superior del instrumento, ni el número de página que le corresponde en la parte inferior;

    iii) notas de apertura y cierre incompletas;

    iv) omisión o repetición de números en ciertos instrumentos públicos que alteran la secuencia numérica y sus concordantes fechas;

    v) notas de saca incompletas en todas las escrituras;

    vi) falta de firma de otorgantes y/o del notario en 1,500 escrituras;

    vii) falta de iniciales de uno o más comparecientes al margen de uno o más folios;

    viii) escrituras con iniciales y firmas que no corresponden a la de los comparecientes;

    ix) escrituras con espacios en blanco;

    x) omisión de iniciales del representante de la financiera o acreedor hipotecario al margen del folio donde figura la firma en escrituras de primera hipoteca;

    xi) no se ha hecho la entrada de 1,190 asientos al Registro de Testimonios;

    xii) falta la firma del notario en 2,146 asientos del Registro de Testimonios;

    xiii) deficiencias en sellos −cálculo preliminar de falta de pago de los correspondientes aranceles (sellos de rentas internas, impuesto notarial y asistencia legal) de aproximadamente $70,000.00.

Advertidos de las graves faltas notariales identificadas en la obra notarial del licenciado Amundaray Rivera --y sorprendidos por su falta de interés en corregir las mismas-- el 21 de mayo de 2004 emitimos una segunda Resolución concediéndole a éste el término de quince (15) días para que mostrara causa por la cual no debía ser suspendido del ejercicio de la abogacía.

En su comparecencia el licenciado Amundaray expresó que luego de hacer un análisis ponderado de los señalamientos de este Tribunal no encuentra violación alguna a los Cánones de Ética Profesional que justifiquen su separación inmediata del ejercicio de la profesión. Asimismo expresó que "[n]inguna de las deficiencias señaladas tienen el alcance de una violación a los Cánones de Ética Profesional" y que, como cuestión de hecho, "ninguno de los señalamientos de este Tribunal implica violación a los Cánones de Ética Profesional."

Naturalmente, no podemos avalar la actitud de indiferencia y dejadez asumida por el abogado Amundaray Rivera. Las graves deficiencias identificadas en su obra notarial constituyen crasas violaciones a lo dispuesto en la Ley Notarial del Puerto Rico, 4 L.P.R.A. secs. 2001 *et seq.* Ello, a su vez, infringe el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, C.38. Veamos.

I

De entrada precisa recordar que "[e]l notario es un profesional del Derecho que ejerce una función pública para robustecer, con una presunción de verdad, los actos en que interviene, para colaborar en la formación correcta del negocio jurídico y para solemnizar y dar forma legal a los negocios jurídicos privados". *In re* Torres Olmeda, 145 D.P.R. 384, 392 (1998) (citando a E. Giménez Arnau, Introducción al Derecho Notarial, Madrid, Ed. Rev. Der. Privado, 1944, pág. 44). Con esto en mente, hemos expresado que la notaría es una función de cuidado que debe ser ejercida con sumo esmero, diligencia y celo profesional. *In re* Vera Vélez, 148 D.P.R. 1, 7-8 (1999); *In re* Torres Olmeda, ante, a la pág. 392; *In re* Rodríguez Mena, 126 D.P.R. 205 (1990); In re Vergne Torres, 121 D.P.R. 500 (1988).

A tono con lo anterior, hemos señalado que al desplegar sus funciones el notario está obligado a cumplir estrictamente con la Ley Notarial de Puerto Rico, los Cánones de Ética Profesional y el contrato entre las partes. Según hemos resuelto, la inobservancia de esta obligación demuestra una indiferencia que constituye una violación a las normas éticas que rigen la profesión legal y expone al notario a la acción disciplinaria correspondiente. *In re* Rodríguez Báez, 129 D.P.R. 819 (1992); *In re* Bringas Rechani, 128 D.P.R. 132 (1991). Siguiendo esta tónica hemos precisado que un notario

infringe el Canon 38 del Código de Ética Profesional --el cual exige de los abogados que se esfuercen al máximo de su capacidad en la exaltación del honor y la dignidad de su profesión-- cuando otorgan un documento notarial en violación de la Ley Notarial de Puerto Rico. *In re* Torres Olmeda, ante, a la pág. 393.

Un simple análisis de las faltas enumeradas en el informe presentado ante nos por la Directora de la Oficina de Inspección de Notarias respecto a las deficiencias encontradas en la obra notarial del licenciado Amundaray es más que suficiente para advertir la comisión de serias violaciones a la Ley Notarial de Puerto Rico por parte de este abogado. En primer lugar, el licenciado Amundaray incumplió su deber de adherir los sellos de Rentas Internas e Impuesto Notarial y cancelarlos al momento de autorizar los documentos públicos otorgados ante él. En segundo lugar, éste incumplió con su deber de conservar y custodiar los protocolos en su poder al no encuadernar los protocolos correspondientes a los años 1994 al 1997 y descuidar los instrumentos autorizados en estos años. En tercer lugar, se han identificado 1,500 escrituras autorizadas por el licenciado Amundaray en las que falta la firma de los otorgantes y/o del notario autorizante. Su obra notarial refleja, además, graves deficiencias con relación a la forma de los instrumentos, así como faltas relacionadas al Registro de Testimonio.

Como es sabido, entre los deberes impuestos al notario autorizante de un documento público por la Ley Notarial de Puerto Rico y su Reglamento se encuentra el de adherir y cancelar en cada escritura original que otorgue, y en las copias certificadas que de ésta expida, los correspondientes sellos de Rentas Internas a favor del Estado y del Colegio de Abogados de Puerto Rico. Véase Artículo 10 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2021 y Regla 14 del Reglamento Notarial de Puerto Rico, 4 L.P.R.A. Ap. XXIV R. 14.

Sobre este particular hemos precisado que dejar de adherir los sellos de rentas internas y cancelarlos al momento de autorizar los documentos públicos constituye una falta grave por ser de naturaleza continua y expone al notario a severas sanciones disciplinarias. *In re* Casiano Silva, 145 D.P.R. 343, 347 (1998); *In re* Cardona Estelritz, 137 D.P.R. 453, 455 (1994); *In re* Colón Muñoz, 131 D.P.R. 121, 153-55 (1992); *In re* Feliciano, 115 D.P.R. 812, 813 (1984). Asimismo, hemos expresado que el incumplimiento con esta obligación constituye no sólo una violación a la Ley Notarial de Puerto Rico, sino que, además, puede ser constitutivo del delito de apropiación ilegal si el notario ha cobrado al cliente el importe de dichos sellos. Véase: *In re* Cardona Estelritz, ante; *In re* Merino Quiñones, 115 D.P.R. 812 (1984).

Por otra parte, el Artículo 16 de la Ley Notarial de Puerto Rico, 4 L.P.R.A. sec. 2034, dispone que "[l]os

otorgantes y los testigos firmarán la escritura y además estamparán las letras iniciales de su nombre y apellido o apellidos al margen de cada una de las hojas del instrumento, las cuales rubricará y sellará el notario." Asimismo, el Artículo 34 de la Ley establece que serán nulos aquellos instrumentos públicos "[e]n que no aparezcan las firmas de las partes y testigos cuando deban hacerlo, y la firma del notario." 4 L.P.R.A. sec. 2052. Sobre este particular, hemos expresado que para que una escritura pública sea válida debe tener la firma de cada uno de los comparecientes al final de la misma y sus iniciales al margen de cada uno de los folios. *In re* Moreira Avillán, 147 D.P.R. 78, 86-87 (1999). Del mismo modo, hemos resuelto que la omisión de tomar la firma e iniciales, además de ser una falta notarial grave y una violación a la fe pública de que están investidos los notarios, es causa de nulidad del instrumento público. *Ibíd*.

Otra de las obligaciones impuestas por la Ley Notarial de Puerto Rico es la de encuadernar los protocolos por año natural, que no es otra cosa que las escrituras matrices y actas autorizadas por el notario. 4 L.P.R.A. sec. 2071. A esos efectos, el Artículo 52 de la Ley dispone, en lo aquí pertinente, que "[e]n el tercer mes de cada año, deberán quedar encuadernados los Protocolos del año anterior con su correspondiente índice de contenido para cada tomo."[2] 4

---

[2] Este Artículo fue enmendado por la Ley Núm. 265 de 17 de agosto de 1999. Antes de esta enmienda el mismo disponía
(Continúa . . .)

L.P.R.A. sec. 2076. Estos índices deben ser preparados por orden de instrumentos e incluir el nombre completo de los comparecientes, el nombre de la persona representada, de ser éste el caso, la fecha y lugar del otorgamiento, el negocio jurídico realizado y los números de los folios que incluye el mismo.

La Ley Notarial dispone, además, que todas las hojas del protocolo, incluyendo sus anexos, irán foliadas en la parte superior derecha en forma permanente con el número -- en guarismos-- que les pertenezca por su orden y cada folio llevará el número que le corresponda según las páginas que contenga el documento. 4 L.P.R.A. sec. 2073; véase, además: Reglas 55-56 del Reglamento Notarial, 4 L.P.R.A. Ap. XXIV, R.55 y 56. También deberán incluirse las notas de apertura y cierre las cuales deberán ser firmadas, signadas, selladas, rubricadas y fechadas por el notario autorizante.[3] 4 L.P.R.A. sec. 2074.

---

para que los protocolos fueran encuadernados "en el segundo mes de cada año".

[3] Este Artículo dispone:

> La primera cara del primer documento de cada documento de cada protocolo se rotulará del modo siguiente:
>
> > "Protocolo de instrumentos públicos correspondientes al año (tal)."
>
> Del mismo modo se cerrará cada protocolo en el último día de cada año natural, autorizando el notario la siguiente nota, a continuación de la página final del último instrumento protocolado:
>
> > "Concluye el protocolo del año (tal) que contiene (tantos) instrumentos públicos y

(Continúa . . .)

En cuanto a los testimonios o declaraciones de autenticidad, la Ley Notarial le impone al notario la obligación de llevar un registro de los mismos en notas concisas fechadas, numeradas, selladas y suscritas por ellos haciendo constar el nombre de los otorgantes y una relación sucinta del acto autenticado. A tenor con lo dispuesto en la Ley, estos registros se llevarán en libros de no más de quinientas (500) hojas, debidamente encuadernados y con sus páginas numeradas sucesivamente.4 L.P.R.A. sec. 2094.

## II

Como resulta obvio, el licenciado Amundaray ha violentado todos y cada uno de los preceptos mencionados en el acápite que antecede. Su obra notarial refleja deficiencias de naturaleza seria y de carácter continuo y repetitivo. Algunas de estas faltas --como la ausencia de firmas de los otorgantes o del notario-- son de tal gravedad que afectan la eficacia misma del instrumento. Otras, como el no cancelar sellos en las escrituras públicas, no sólo constituyen violaciones crasas a la Ley Notarial de Puerto Rico, sino que, además, pueden ser

_____

(tantos) folios autorizados por mí, el infrascrito notario, de lo que certifico."

Estas notas, tanto las de apertura como las de cierre del protocolo deberán ser firmadas, signadas, selladas, rubricadas y fechadas por el notario autorizante.

constitutivas del delito de apropiación ilegal. No hay manera de justificar la actuación del notario Amundaray en el presente caso; sobre todo cuando consideramos el tiempo transcurrido --cuatro años-- su efecto acumulativo y la tardanza del referido notario en corregir las graves faltas señaladas.

Por otro lado, hemos resuelto que una vez el Inspector de Protocolos detecta incumplimientos o deficiencias en la obra notarial de un notario, éste tiene el deber ineludible de corregirlas con suma diligencia.[4] *In re* Capestany Rodríguez, 148 D.P.R. 728, 736 (1999). A esos efectos, hemos sido claros al señalar que la Directora de la Oficina de Inspección de Notarías es la funcionaria a quien este Tribunal le ha delegado la supervisión de los notarios y que la voluntaria y temeraria desatención de los abogados a las comunicaciones y requerimientos que hace su Oficina tiene el mismo efecto disruptivo en nuestra función reguladora de la profesión que cuando se desatiende una orden emitida directamente por este Tribunal.

Por último, y a diferencia de lo que expone ante nos el abogado Amundaray Rivera, somos del criterio que las

---

[4] Como es sabido, de surgir en esta etapa divergencias de criterio entre el Inspector de Protocolos y el notario, "en relación con la forma y la manera de llevar éste sus Protocolos y Registros de Testimonios con respecto al cumplimiento de [la Ley Notarial] la cancelación de derechos o cualquier otra ley relacionada con las formalidades de los instrumentos o documentos", el Art. 63 de la Ley Notarial, 4 L.P.R.A. sec. 2103, provee un procedimiento para dirimir las discrepancias en el foro judicial.

deficiencias identificadas en su obra notarial <u>sí</u> configuran violaciones a los Cánones de Ética Profesional. Ya hemos señalado que al autorizar un documento notarial en violación a la Ley Notarial de Puerto Rico el notario infringe el Canon 38 del Código de Ética Profesional, ante. Asimismo, hemos reafirmado el poder inherente de este Tribunal para desaforar o tomar cualquier otra medida disciplinaria contra los miembros de la profesión que incurran en el incumplimiento de sus deberes como notarios. *In re* <u>Madera Acosta</u>, 144 D.P.R. 743, 746 (1998).

No cabe duda que en el presente caso el abogado Amundaray Rivera ha incumplido, de manera crasa, los postulados de la Ley Notarial de Puerto Rico y los requerimientos de la Directora de la Oficina de Inspección de Notarías. Asimismo, ha asumido una actitud irrespetuosa y de dejadez e indiferencia ante los requerimientos de este Tribunal respecto al estado de su obra notarial. <u>Ello definitivamente lo descualifica no sólo para el ejercicio de la notaría, sino también de la abogacía en Puerto Rico</u>.

III

Por los fundamentos antes expresados, <u>procede decretar la suspensión indefinida e inmediata de Hiram Amundaray Rivera del ejercicio de la abogacía en nuestra jurisdicción</u>.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Hiram Amundaray Rivera

TS-8348

SENTENCIA

San Juan, Puerto Rico, a 12 de noviembre de 2004

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual forma parte integral de la presente, se dicta Sentencia decretando la suspensión, indefinida e inmediata, de Hiram Amundaray Rivera del ejercicio de la abogacía en nuestra jurisdicción.

Le imponemos a éste el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Además, deberá certificarnos dentro del término de treinta días, a partir de la notificación de esta Sentencia, el cumplimiento de estos deberes.

El Alguacil de este Tribunal procederá a incautarse de la obra y sello notarial del Sr. Hiram Amundaray Rivera, luego de lo cual entregará la misma a la Oficina de Inspección de Notarías para examen e informe a este Tribunal.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton inhibido. La Jueza Asociada señora Rodríguez Rodríguez no interviene.


                              Patricia Otón Olivieri
                           Secretaria del Tribunal Supremo