EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| | 2026 TSPR 3 |
| | 217 DPR ___ |
| Eddie A. Pérez Pérez (TS-16,917) | |

Número del Caso:  CP-2020-0004


Fecha:  15 de enero de 2026


Oficina del Procurador General:

    Hon. Omar Andino Figueroa
    Procurador General

    Lcda. Lorna Cortés Rivera
    Subprocuradora General

    Lcda. Mabel Sotomayor Hernández
    Subprocuradora General

    Lcda. Noemí Rivera De León
    Procuradora General Auxiliar

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar


Representante legal del querellado:

    Lcdo. Carlos S. Dávila Vélez


Comisionada Especial:

    Hon. Ygrí Rivera Sánchez



Materia:  Conducta Profesional – Suspensión del ejercicio de la abogacía por un término de 6 meses y de la notaría de manera indefinida por infringir los Cánones 35 y 38 del Código de Ética Profesional, así como el Art. 2 de la Ley Notarial.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| In re:<br><br>Eddie A. Pérez Pérez<br>(TS-16,917) | CP-2020-0004 | Conducta profesional |

**PER CURIAM**

En San Juan, Puerto Rico, a 15 de enero de 2026.

Nuevamente nos vemos obligados a ejercer nuestra facultad disciplinaria. En esta ocasión, suspendemos del ejercicio de la abogacía por un término de seis meses y, de la notaría, de manera indefinida, a un miembro de la clase togada. Su proceder, infringió los Cánones 35 sobre sinceridad y honradez, y 38 sobre preservar el honor y la dignidad de la profesión, del Código de Ética Profesional, *infra*, así como varias de las disposiciones del Reglamento Notarial y de la Ley Notarial de Puerto Rico, *infra*. Ello ocurrió al dar testimonio ilegítimo sobre la autenticidad de una firma y dar fe pública de hechos falsos. Veamos.

I

El Lcdo. Eddie A. Pérez Pérez (licenciado Pérez Pérez o promovido) fue admitido al ejercicio de la abogacía en Puerto Rico el 30 de junio de 2008, y a la notaría el 19 de febrero del año siguiente. Sin embargo, fue a partir de la *Resolución y Orden* de la Comisión de Servicio Público (CSP) del 6 de

abril de 2018, en el caso administrativo núm. OMC-2014-128, *Comisión de Servicio Público v. Ángel F. Sánchez Acabá,* que el presente caso disciplinario tuvo su génesis. En esta, la CSP determinó que el 10 de junio de 2013, el Sr. Ángel F. Sánchez Acabá (señor Sánchez Acabá) radicó una *Solicitud de Autorización de Traspaso* (Solicitud) con información falsa. Concretamente, el señor Sánchez Acabá figuraba en la Solicitud como cesionario y la Sra. Rosa M. Raíces Vélez Q.E.P.D. (señora Raíces Vélez) como cedente, posterior a su deceso el 10 de octubre de 2012.

En lo concerniente a la presente acción disciplinaria, la CSP incluyó en sus determinaciones de hechos que la Solicitud fue juramentada ante el licenciado Pérez Pérez el 17 de mayo de 2013. El juramento de la Solicitud lee como sigue:

Certificación

Certifico que la información suministrada en esta solicitud es cierta y autorizo, de ser necesario, la misma sea corroborada. Entiendo que suministrar información falsa conlleva la imputación de cargos en mi contra según las disposiciones aplicables del Código Penal de Puerto Rico.

| Rosa M. Raíces Vélez | Ángel Sánchez Acabá |
|---|---|
| Firma del Cedente | Firma del Cesionario |
| 717210 lic. | 243046 |
| Núm. de Identificación | Núm. de Identificación |

_____(en blanco)_____<br>Día/Mes/Año<br>JURAMENTO

Affidavit Núm..: 710
Jurada y suscrita ante mí por **Rosa Raíces Vélez**, mayor de edad, estado civil **soltera** de profesión **operadora** vecino de **San Juan** quien doy fe de haber identificado mediante **Lic. conducir** y por **Angel Sanchez Acaba**, mayor de edad, estado civil **casado** de profesión **operador** vecino de **San Juan** de quien

doy fe de haber identificado mediante **Lic. Conducir** en **Guaynabo,** Puerto Rico hoy **17** de **mayo** de **2013.**[1]

[Sello notarial con el nombre "Eddie Antonio Pérez Pérez"]

[firma que lee "Eddie A. Pérez Pérez"]
Notario Público o Funcionario de la CSP

Consecuentemente, la CSP refirió la conducta desplegada por el promovido a esta Curia. El 26 de abril de 2018, este Tribunal acogió el referido como la Queja AB-2018-0093.

El 15 de mayo de 2018, el licenciado Pérez Pérez contestó la *Queja* negando los hechos. A saber, certificó que: (1) no conocía al señor Sánchez Acabá o a la señora Raíces Vélez; (2) el último número en su Registro de Testimonios era el 636, mas no existía el número 710; (3) ante él no se juramentó la Solicitud de Autorización de Traspaso con fecha del 17 de mayo de 2013; (4) ante él nunca se había juramentado una Solicitud de Autorización de Traspaso de la CSP; (5) el sello notarial que aparecía en la Solicitud era similar al suyo; (6) no reconocía la letra en manuscrito en el juramento de la referida Solicitud; y (7) la firma del notario en el documento no era la suya. Por último, levantó la defensa de prescripción estatuida por el Art. 1807 (5) del Código Civil de 1930, 31 LPRA sec. 5297(5) (derogado), por haber transcurrido tres años desde que la promovente, la CSP, conoció de la alegada violación a los Cánones de Ética Profesional.[2]

---

[1] Las secciones enfatizadas fueron cumplimentadas de manera manuscrita.
[2] El inciso 5 del Art. 1867 del derogado Código Civil de 1930, 31 LPRA ant. sec. 5297, dispone que, por el transcurso de tres (3) años, prescriben las acciones para exigir el cumplimiento de las acciones disciplinarias

El 14 de junio de 2018, remitimos la *Queja* a la Oficina de Inspección de Notarías (ODIN) y a la Oficina del Procurador General para la investigación y rendición de los respectivos informes.

En cumplimiento con lo anterior, el 19 de julio de 2018, la ODIN presentó su Informe donde confirmó que el último asiento del Libro de Registro de Testimonios del licenciado Pérez Pérez era el núm. 636, correspondiente al año 2013. A su vez, indicó que el testimonio número 710 no constaba inscrito en el Registro de Testimonios, como tampoco fue informado en el Índice Mensual de Actividad Notarial de mayo de 2013. A pesar de sus hallazgos, la ODIN manifestó que las controversias suscitadas en torno a la firma y el sello notarial impregnado en la Solicitud se encontraban fuera del alcance de sus facultades investigativas. Finalmente, al entender que se podía estar ante una violación a la fe pública notarial, los Arts. 2, 56 y 57 de la Ley Notarial, 4 LPRA secs. 2002, 2091 y 2092, las Reglas 67, 72, y 73 del Reglamento Notarial y, por consiguiente, a los Cánones 18, 35 y 38 del

---

contra los abogados y notarios por infracción a los Cánones de Ética Profesional.

No obstante, en *In re Pellot Córdoba*, 204 DPR 814 (2020), resolvimos que dicha actuación legislativa afectaba sustancialmente nuestras facultades constitucionales de regular la profesión legal e imponer sanciones disciplinarias a sus integrantes, pues tenía el efecto de imponernos, unilateralmente, un término para ejercer nuestro poder inherente. En ese sentido, concluimos que le correspondía a este Tribunal, mediante un análisis sosegado de cada caso, determinar si una queja debía ser archivada por frivolidad, por incuria o por la inhabilidad de obtener prueba que sustentase las alegaciones del quejoso.

Dicho esto, del expediente ante nos no surge argumento alguno, más allá del mero pasar del tiempo, que mueva nuestro ánimo a considerar el argumento de prescripción. Por consiguiente, en el presente caso declinamos le defensa de prescripción como fundamento para que el proceso disciplinario contra el licenciado Pérez Pérez sea desestimado.

Código de Ética Profesional, 4 LPRA Ap. IX, le remitió copia del expediente al Procurador General.[3]

El 11 de diciembre de 2018, le ordenamos al licenciado Pérez Pérez a comparecer al Negociado de Ciencias Forenses (NCF) para someterse a una prueba caligráfica ante el Perito de Documentos Dudosos, según solicitado por el Procurador General. Posteriormente, el promovido informó que, el 13 de febrero de 2019, le fue administrada la referida prueba caligráfica.

El Informe del Procurador General, sometido el 25 de junio de 2019, estableció que el Examinador de Documentos Dudosos del NCF (perito), comparó la firma contenida en el juramento de la Solicitud con las firmas del licenciado Pérez Pérez que figuraban en los Índices Notariales originales presentados por él desde febrero hasta septiembre de 2013, y con las muestras de escritura que se le tomaron en su oficina. Tras culminar su análisis, el perito consignó lo siguiente:

1. Que el sello que aparecía en la Solicitud no poseía las mismas características del sello que aparecía en los Índices Notariales presentados por el Sr. Pérez Pérez en el 2013 ante la ODIN.
2. Que la firma que aparecía en la Solicitud era altamente probable que fuera realizada por el Sr. Pérez Pérez.
3. Que el Sr. Pérez Pérez era el autor de la escritura que aparecía en la página 4 de 6 de la Solicitud. O sea, que llenó los espacios en blanco en la sección del Juramento.

En consideración a estos hallazgos, el Procurador General señaló que inquirió al perito sobre su conclusión de que

---

[3] Hacemos referencia al Código de Ética Profesional por ser el cuerpo normativo vigente al momento de los hechos.

existía una *alta probabilidad* de que la firma que aparecía en la Solicitud fuese la del promovido. El perito indicó que los exámenes realizados no le permitieron concluir categóricamente que la firma fuese de la autoría del licenciado Pérez Pérez. En cambio, **el Procurador General resaltó que el perito sí pudo concluir que el licenciado Pérez Pérez era el autor del manuscrito que obraba en el resto del juramento.**[4] A su vez, el Procurador General constató que el Registro de Testimonios del licenciado Pérez Pérez constaba de un libro con asientos numerados del 1-636, y que este fue inspeccionado y aprobado el 18 de septiembre de 2014.

El Procurador General también destacó que la señora Raíces Vélez feneció casada con el señor Sánchez Acabá el 10 de octubre de 2012, mientras que en la Solicitud del 17 de mayo 2013 se certificó que esta era mayor de edad, soltera, operadora, vecina de San Juan y que fue "identificada" mediante licencia de conducir. Por consiguiente, identificó una posible violación a los Cánones 35 y 38 del Código de Ética Profesional, *supra*, y sometió el caso ante esta Curia.

El 29 de julio de 2019, el licenciado Pérez Pérez nos solicitó el archivo de la Queja por entender que no se cumplió con el estándar de prueba clara, robusta y convincente, pues no se pudo concluir que la firma fuese de su autoría.

Evaluadas ambas posturas, le ordenamos al Procurador General que presentara la querella en contra del licenciado

---

[4] Véase la nota al calce núm. 1.

Pérez Pérez, a quien le concedimos un término para mostrar causa por la cual no debía ser suspendido temporeramente del ejercicio de la notaría mientras discurría el procedimiento disciplinario.

En atención a ello, el 20 de noviembre de 2020, el licenciado Pérez Pérez presentó una moción en la cual reiteró los argumentos de prescripción y falta de prueba de que legitimó, a sabiendas, una firma falsificada. Al no resultar persuadidos, el 26 de noviembre de 2019, ordenamos su suspensión del ejercicio de la notaría hasta tanto culminara el proceso disciplinario.

El 6 de febrero de 2020, el Procurador General presentó la *Querella* CP-2020-0004, donde se le imputaron tres cargos al licenciado Pérez Pérez. El primer y segundo cargo por infringir los preceptos de la fe pública notarial contenidos en el Art. 2 de la Ley Notarial de Puerto Rico, *supra*, y el Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, al dar fe, falsamente, de que la señora Raíces Vélez firmó en su presencia el Testimonio Núm. 710 del 17 de mayo de 2013. El tercer cargo se formuló por violar el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, al no exaltar el honor y la dignidad de la profesión, y al no evitar hasta la apariencia de conducta impropia al otorgar el Testimonio Núm. 710 del 17 de mayo de 2013, en contravención de la Ley y el Reglamento Notarial, por consignar hechos falsos en el mismo.

El 11 de marzo de 2020, el licenciado Pérez Pérez presentó su *Contestación a la Querella*. Una vez más, levantó el

argumento de la prescripción de la acción disciplinaria y negó los hechos. Añadió que, aunque el manuscrito fuese suyo, sin la firma no se configuraba una violación a los Cánones de Ética Profesional y a la Ley Notarial. Adujo, además, que la conclusión pericial de que la firma era suya era una inferencia que carecía de certeza matemática. Por último, alegó que su firma y sello notarial pudieron ser falsificados por un tercero que tuvo acceso al Registro de Testimonio que le fue hurtado en noviembre de 2012.

Tras varios trámites procesales, el 27 de septiembre de 2023, designamos a la Hon. Ygrí Rivera Sánchez, Ex Jueza del Tribunal de Apelaciones, como Comisionada Especial. El 26 de agosto de 2024, se celebró una vista en la cual se estipuló el *Informe sobre el Estado de Inspección de Obra Notarial incautada*. Con relación al contenido de este, en la vista, **el promovido aceptó que no hubo una notificación formal por su parte de que su Registro de Testimonios le fue hurtado.**

El 4 de noviembre de 2024, ambas partes presentaron el *Segundo Informe de Conferencia con Antelación a Juicio Enmendado*, el cual fue discutido en la vista en su fondo celebrada el 14 de noviembre de 2024. En el Informe aludido estipularon, entre otros hechos, los siguientes:

> 16. En este procedimiento disciplinario, el querellado **reconoce que la escritura en manuscrito en la Solicitud de Autorización de Traspaso es suya,** con excepción del número de affidávit.
>
> 17. **El querellado reconoce que la impresión del sello que obra en la Solicitud de Traspaso es su sello notarial.** (Énfasis suplido).

Además, en dicha vista el Procurador General presentó el testimonio del perito que le administró la prueba caligráfica del promovido y analizó los resultados. La vista en su fondo continuó el 22 de enero de 2025. El licenciado Pérez Pérez no formuló planteamiento alguno.

El 21 de febrero de 2025, el Procurador General presentó un *Memorando sobre la Prueba de la Oficina del Procurador General de Puerto Rico*. Concluyó que la prueba presentada ante la consideración de la Comisionada Especial demostró de forma clara, robusta y convincente que el promovido había incurrido en la conducta imputada. A saber, sostuvo que, a pesar de que en el proceso disciplinario el licenciado Pérez Pérez lo negó inicialmente, en el *Segundo Informe de Conferencia con Antelación a Juicio Enmendado*, **admitió que tuvo el documento en sus manos, que llenó los blancos, y que el sello notarial era el suyo, por lo que podía deducirse que él mismo lo estampó, aunque continuaba insistiendo en que no firmó la Solicitud.** A juicio del Procurador General, esta admisión corroboraba los hallazgos del perito de que fue el promovido quien plasmó el manuscrito en el documento.

En torno a la firma, destacó que la prueba pericial estableció que existía una **alta probabilidad** ⸺nivel más cercano en la escala a una identificación positiva del firmante⸺ de que el licenciado Pérez Pérez fuese su autor. Dicha conclusión, la cual no fue rebatida, se sustentó en las similitudes en rasgos, hábitos, trazos, ángulos, proporciones, formación de letra, fluidez y continuidad. Por lo cual, el

Procurador General esgrimió que, en esa etapa, la única controversia que permanecía ante la Comisionada Especial era si el promovido firmó la Solicitud.

Por último, esgrimió que, de concluirse que hubo una infracción al Art. 2 de la Ley Notarial, *supra*, y a los Cánones 35 y 38 el Código de Ética Profesional, *supra*, tomáramos en consideración lo siguiente: (1) el licenciado Pérez Pérez fue admitido al ejercicio de la abogacía el 30 de junio de 2008 y a la notaría el 19 de febrero de 2009; (2) fue previamente suspendido por este Tribunal; y (3) no aceptó haber autorizado el testimonio ni demostró arrepentimiento.

Culminado el desfile de prueba, el 21 de febrero de 2025, el promovido compareció para solicitar que se retirara la estipulación de hecho núm. 17 del *Segundo Informe* donde reconocía que la impresión del sello que obraba en la Solicitud era el suyo. Además, insistió en que la conclusión pericial de que el sello notarial que obraba en la Solicitud no tenía las mismas características que el suyo abonaba a que él no lo estampó y no dio fe, falsamente. Agregó que, de concluir que la firma era suya, se debía tomar en consideración que no se presentó evidencia alguna sobre intención o deliberación de mentir.

El 28 de agosto de 2025, la Comisionada presentó su Informe ante esta Curia. En lo concerniente al Cargo I y II, concluyó que el licenciado Pérez Pérez infringió los preceptos de la fe pública notarial contenidos en el Art. 2 de la Ley Notarial de Puerto Rico, *supra*, y el Canon 35 del Código de

Ética Profesional, *supra*, al dar fe, falsamente, de que la señora Raíces Vélez firmó en su presencia el Testimonio Núm. 710 del 17 de mayo de 2013. De igual forma, manifestó que los hechos transgredían el Canon 35, particularmente, al contravenir la Ley y el Reglamento Notarial, y al consignar hechos falsos en el documento.

Como parte de su razonamiento, resaltó que quedó demostrado que la señora Raíces Vélez falleció el 10 de octubre de 2012, mientras que la declaración jurada contenía información falsa, **pues se hizo constar su comparecencia en actos posteriores a su muerte.** Aunque el promovido negó durante años haber llenado los blancos del juramento con su puño y letra, y haber estampado el sello notarial, finalmente admitió y estipuló lo contrario. Sin embargo, intentó retractarse de dicha admisión, una vez concluido el desfile de prueba.

De otra parte, a la Comisionada le mereció credibilidad la conclusión del perito de que existía una **alta probabilidad** de que el promovido fuera el autor de la firma, **y que fue realizada con el mismo bolígrafo que el manuscrito.** Destacó, además, que, conforme al testimonio pericial, la categoría de alta probabilidad constituía el renglón más cercano a una identificación del autor. La Comisionada también valoró que el perito declarara de manera pormenorizada el procedimiento seguido para analizar las muestras de escrituras, **sin que el promovido ofreciera prueba alguna que refutara dichas**

**conclusiones. Todo ello la condujo a determinar que el licenciado Pérez Pérez firmó el juramento.**

Evaluada toda la prueba, la Comisionada concluyó que el Procurador General probó los tres cargos imputados con el estándar de prueba clara, robusta y convincente, determinando que el licenciado Pérez Pérez infringió la normativa ética y notarial antes mencionada. Se recordó, además, que el promovido ya había sido suspendido de la abogacía y la notaría de forma inmediata e indefinida en el 2013, y que posteriormente fue readmitido al ejercicio de ambas. Asimismo, resaltó que, como parte del presente proceso disciplinario, el promovido volvió a ser suspendido del ejercicio de la notaría en 2019 hasta que este culminara.

El caso quedó sometido para su adjudicación en los méritos por este Tribunal el 19 de septiembre de 2025.

II

A

Hemos reconocido en repetidas ocasiones que los profesionales del Derecho que ejerzan la notaría están obligados al cumplimiento estricto de la Ley Notarial de Puerto Rico, del Reglamento Notarial de Puerto Rico y los Cánones del Código de Ética Profesional. *In re Pagán Díaz,* 198 DPR 398 (2017). No obstante, de encontrar que un miembro de la profesión infringió alguna de las disposiciones de dichos cuerpos normativos, ostentamos el poder inherente para ejercer una acción disciplinaria en contra de este. *In re*

*Fontánez Fontánez*, 181 DPR 407 (2011); *In re Amundaray Rivera*, 163 DPR 251 (2004); *In re Madera Acosta*, 144 DPR 743 (1998).

La fe pública notarial, espina dorsal del notariado, constituye una delegación del Estado y su quebrantamiento afecta directamente la confianza del ordenamiento jurídico. *In re Vázquez Margenat*, 204 DPR 968 (2020). Esa delegación ocurre por virtud del Art. 2 de la Ley Notarial de 1987, Ley Núm. 75 de 2 de julio de 1987, según enmendada, 4 LPRA sec. 2002, el cual dispone lo que sigue:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Corchetes en el original). *In re Rivera Aponte*, 169 DPR 738 (2006).

Conforme surge, la fe pública notarial va acompañada de un ejercicio pleno del notario o notaria respecto a lo que ha presenciado. *In re González Pérez*, 208 DPR 632 (2022); *In re Peña Osorio*, 202 DPR 779 (2019). Ello repercute sobre la presunción de que el documento notarial, endosado por la fe de un notario o una notaria, cumple con las exigencias de ley. *In re Arocho Cruz et al.*, 198 DPR 360 (2018) citando a *In re Rivera Aporte*, *supra*. Esa presunción también brinda confianza en los hechos jurídicos y circunstancias que allí constan como percibidos y comprobados con sus sentidos, o ejecutados por

dicho funcionario o funcionaria. Íd. Es, precisamente, "esta presunción de legalidad, veracidad y legitimidad lo que le brinda certeza, garantía y eficacia al documento notarial". *In re Vázquez Pardo*, 185 DPR 1031, 1042 (2012).

Por lo tanto, certificar un hecho falso transgrede la fe pública notarial y mina la confianza del sistema de autenticidad documental. *In re Colón Alvarado*, 213 DPR 452 (2024). **Incluso, hemos resuelto que la fe pública notarial es de tal envergadura, que resulta inmaterial la intención del notario a faltar a la verdad para que incurra en su violación.** *In re Sánchez Pérez*, 210 DPR 235 (2022). En suma, cualquier desviación de los deberes notariales es susceptible de sanción, pero **la consignación de hechos falsos constituye una de las violaciones más graves al ejercicio del notariado.** *In re Rádinson Caraballo*, 2025 TSPR 71, 216 DPR__ (2025).

Ahora bien, los Arts. 56 al 60 de la Ley Notarial, 4 LPRA secs. 2091-2095, y las Reglas 64 a la 73 del Reglamento Notarial, *supra*, contienen los preceptos jurídicos aplicables a los testimonios o declaraciones de autenticidad. Mediante un testimonio o declaración de legitimación de firma, el notario acredita que, en determinada fecha, la persona que evidentemente es quien dice ser firmó un documento en su presencia. Art. 56 de la Ley Notarial, 4 LPRA sec. 2091; Regla 67 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV. Así pues, queda diáfano que quebranta la fe pública notarial el notario o la notaria que da fe de la comparecencia de una persona otorgante sin que esta, en efecto, haya comparecido.

*In re González Pérez*, *supra*. Incluso, en *In re Llanís Menéndez I*, 175 DPR 22 (2008), enfatizamos que **los notarios deben abstenerse de otorgar fe notarial a una declaración jurada en ausencia de la comparecencia personal del declarante.**

A tono con lo anterior, autorizar una declaración jurada sin la comparecencia personal del firmante equivale a certificar un hecho falso, lo cual quebranta la fe pública notarial y erosiona la confianza del sistema de autenticidad documental. *In re Rafols Van Derdys*, 211 DPR 34 (2022). Este tipo de falta quebranta los deberes de ejercer la profesión con sinceridad y honradez, y de forma digna, consignados en los Cánones 18, 35 y 38 del Código de Ética Profesional. *In re Colón Alvarado*, *supra*.

Cónsono, al autenticar firmas, el Reglamento Notarial exige que el notario haga constar, tanto en el testimonio como en el Registro de Testimonios, el medio de identificación del firmante ya sea por conocimiento personal o mediante los métodos supletorios que provee el Art. 17 de la Ley Notarial, 4 LPRA sec. 2035. Art. 57 de la Ley Notarial, 4 LPRA sec. 2092; Regla 67 del Reglamento Notarial, *supra*. Véase, además, *In re Odell Peck*, 176 DPR 237 (2009). Este es el medio para garantizar la identidad del firmante y que el acto se realizó ante la presencia del notario. *In re Villalona Viera*, 206 DPR 360 (2021).

### B

Hace más de dos décadas avalamos la postura de que, en el ejercicio de disciplinar a la abogacía, se justifica una

carga probatoria mayor que la preponderancia. *In re Caratini Alvarado*, 153 DPR 575 (2001). Por lo cual, al sopesar si se ha infringido alguno de los deberes éticos o notariales, debemos emplear el criterio de "prueba clara, robusta y convincente". Íd. Después de todo, está envuelto el derecho fundamental a ganarse el sustento. *In re Sanfeliú Vera*, 2025 TSPR 53, 215 DPR __ (2025). El estándar de prueba clara, robusta y convincente se define como aquel que "produce en el juzgador una convicción de que las alegaciones fácticas son altamente probables". *In re Soto Charraire*, 186 DPR 1019 (2012); *In re Rodríguez Mercado*, 165 DPR 630, 1028 (2005).

C

Según adelantamos, el notario que falte a la verdad al otorgar un instrumento público, medie o no intención, menoscaba la fe pública notarial, debilita la integridad de la profesión legal, y viola su deber de sinceridad y honradez consignado en el Canon 35 del Código de Ética Profesional. *In re Martínez Almodóvar*, 180 DPR 805 (2011). En lo pertinente, el Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, expone lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.
> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho.

De otra parte, el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, precisa el deber de todo abogado

de exaltar el honor y la dignidad al ejercer la profesión. *In re Soto Peña*, 213 DPR 663 (2024). En *In re Rádinson Caraballo*, *supra*, págs. 30-31, expresamos que "[e]sto significa que todo profesional del Derecho debe desempeñarse de manera escrupulosa y guiado por un alto sentido de responsabilidad, teniendo siempre presente la función social que ejerce y la institución que representa".

D

Conforme a la Regla 14 del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, incumbe al Comisionado Especial designado conducir la vista o vistas que sean necesarias para recibir la prueba. Culminado el desfile de prueba, el Comisionado Especial deberá rendir un informe con sus determinaciones de hechos fundamentadas exclusivamente en la prueba presentada y admitida. Regla 14 (k) del Reglamento del Tribunal Supremo, Íd. Al desempeñar un rol análogo al del juzgador de instancia, dicho funcionario es quien mejor puede apreciar la prueba testifical y adjudicar credibilidad. *In re Fontánez Fontánez*, *supra*. En consecuencia, sus determinaciones fácticas merecen nuestro mayor grado de deferencia. Íd.

III

En esta ocasión, tenemos ante nuestra consideración un proceso disciplinario instado contra el Lcdo. Eddie A. Pérez Pérez por dar fe pública notarial de hechos falsos en un testimonio de legitimación de firma. Conforme surge del recuento procesal, el 17 de mayo de 2013, el señor Ángel F. Sánchez Acabá presentó ante la Comisión de Servicios Públicos

una *Solicitud de Autorización de Traspaso.* En esta, se consignó la comparecencia y firma de la Sra. Rosa Raíces Vélez en capacidad de cedente, en una fecha posterior a su fallecimiento. Por consiguiente, la CSP refirió la conducta del promovido a esta Curia, pues surgía que la Solicitud fue juramentada ante el promovido.

Adelantamos que, examinado con detenimiento el expediente ante nuestra consideración, constatamos la determinación de la Comisionada de que quedó demostrado que el licenciado Pérez Pérez empeñó la fe pública notarial, axioma de nuestro ordenamiento jurídico, al legitimar la firma de una persona que había fallecido ocho meses antes del acto jurídico. Concretamente, infringió el Art. 2 de la Ley Notarial, *supra*, y los Cánones 35 y 38 del Código de Ética Profesional, *supra*, al dar fe falsamente de que la señora Raíces Vélez firmó en su presencia el Testimonio Núm. 710 de 17 de mayo de 2013. Veamos.

Iniciamos por reiterar que este Tribunal tiene autoridad disciplinaria, la cual comprende toda actuación que comprometa la corrección y veracidad de los actos notariales. A tenor, el Art. 2 de la Ley Notarial de Puerto Rico, *supra*, suple la norma sobre la cual se cimenta la práctica notarial, y que posiciona al notario como el depositario de una función pública que exige **probidad absoluta** al dar fe respecto a los hechos que este personalmente compruebe o ejecute. Ello, a su vez, reviste al documento notarial de una presunción

controvertible de veracidad, certeza y legitimidad. *In re Vázquez Margenat*, *supra*.

Habida cuenta que la integridad del sistema de autenticidad documental descansa precisamente en dicha presunción, hemos reiterado que transgredir la fe pública notarial tiene efectos corrosivos sobre la confianza pública. *In re Vázquez Margenat, supra.* Delimitado el marco normativo, y conscientes de que está en juego el derecho constitucional del promovido a ganarse el sustento como abogado y notario, pasamos a analizar los hechos con estricta rigurosidad.

La evidencia estipulada por las partes acredita que la Sra. Raíces Vélez falleció el 10 de octubre de 2012. Es decir, ocho meses antes de su comparecencia como cedente en la Solicitud. De aquí que el documento aludido contiene información objetivamente falsa y que no pudo haber sido verificada personalmente por el notario. Concretamente, no hay circunstancia jurídica que permita la dación de fe respecto a una persona que ya falleció.

Tras la imputación de estos hechos, el expediente revela un patrón sostenido de negaciones y contradicciones por parte del promovido. A saber, en al menos cinco ocasiones el licenciado Pérez Pérez negó haber redactado el manuscrito consignado en la Solicitud, negó que fuese su sello notarial y negó reconocer la firma. Sin embargo, **luego admitió que el manuscrito era suyo y estipuló que el sello también lo era.**

Abrimos un paréntesis para puntualizar que, concluida la vista en su fondo y el desfile de prueba del 22 de enero de

2025, el promovido intentó retirar la referida estipulación mediante una *Moción en Cumplimiento de Orden*. En torno a ello, la Comisionada sostuvo en su *Informe* que "[e]l escrito de las partes [haciendo referencia a los Memoriales de Derecho que le solicitó a las partes mediante la Orden del 22 de enero de 2025] era simultáneo y no tenía el propósito de formular nuevos planteamientos que el querellado pudo haber hecho durante el procedimiento". Por consiguiente, juzgamos que la retracción tardía del licenciado Pérez Pérez no le restó fuerza probatoria ni efecto jurídico.

A pesar de las inconsistencias proyectadas por el promovido, el análisis pericial de la prueba caligráfica abona a la conclusión de que el licenciado Pérez Pérez fungió como notario en la Solicitud. Esto es, el perito determinó que existía una **alta probabilidad** de que la firma plasmada en el documento fuera del promovido y que, **tanto la firma como el manuscrito fueron trazados con el mismo instrumento de escritura.** No debe pasar desapercibido que la autoría del manuscrito sí fue confirmada. Esto es, el perito concluyó categóricamente que el licenciado Pérez Pérez era el autor de lo redactado en la página 4 de 6 de la Solicitud. Concretamente, el promovido llenó los espacios en blanco en el juramento de la Solicitud, incluyendo que la señora Raíces Vélez fue identificada mediante su licencia, que era soltera, y residente de San Juan.

Valorando de forma integral las circunstancias, ante la realidad de que el promovido no presentó prueba en contrario,

y que se limitó a negar los hechos, forzosa es la conclusión de que se configuró la legitimación de firma y la dación de fe notarial atribuida al promovido. No albergamos duda de que el promovido dio fe de hechos que no ocurrieron en su presencia, certificó la comparecencia de una persona ya fallecida, y refrendó con su sello la legitimación de firma y juramento de una otorgante, cuya presencia era imposible al momento del acto.

En el pasado hemos sido categóricos, y hoy reafirmamos que, la intención es disciplinariamente irrelevante cuando se certifican hechos falsos. El deber de un notario es diáfano y exige veracidad absoluta. Cualquier desviación de la obligación de atenerse a la veracidad de los hechos constituye una violación grave que atenta contra el sistema de autenticidad documental y los principios éticos que rigen la conducta de los profesionales del derecho que también ejercen el notariado. Por lo tanto, la falta de intención argüida por el promovido no le exime de responsabilidad.

En conclusión, al dar fe, falsamente, de que la señora Raíces Vélez firmó en su presencia el Testimonio Núm. 710 del 17 de mayo de 2013, el licenciado Pérez Pérez certificó un hecho falso. Con ello, faltó al deber de veracidad absoluta que impone el Art. 2 de la Ley Notarial, *supra*. A su vez, infringió el Canon 35 del Código de Ética Profesional, *supra*, al faltar a la sinceridad y honradez que debe guiar su haber profesional. También, transgredió el Canon 38 del Código de

Ética Profesional, *supra*, al menoscabar el honor y la dignidad de la profesión.

IV

Corresponde entonces determinar la sanción disciplinaria adecuada por razón de las violaciones aquí establecidas. En la ponderación de las sanciones que esta Curia ha impuesto en el pasado, hemos sido consistentes en establecer que la certificación de hechos falsos por parte de un notario constituye una de las faltas más graves que puede cometerse. En ese sentido, este Tribunal ha impuesto sanciones que oscilan desde la suspensión prolongada hasta la separación indefinida, según la magnitud del daño a la fe pública. *In re Rafols Van Derdys*, *supra*. En el caso del notario que nos ocupa, existen factores agravantes adicionales que abonan a la necesidad de suspenderlo indefinidamente de la notaría. Específicamente, el notario ha sido previamente suspendido por incumplir con nuestras órdenes y los requerimientos de la Oficina de Inspección de Notarías, lo que denota que no merece continuar ejerciendo las funciones notariales. Véase, *In re Eddie A. Pérez* Pérez, 189 DPR 98 (2013).

A la luz de la totalidad de los parámetros, la magnitud del perjuicio a la fe pública causada en este caso al dar fe de la comparecencia de una persona fallecida, la conducta procesal evasiva, la falta de arrepentimiento, y que este es el segundo proceso disciplinario llevado en su contra, entendemos que es apropiada una suspensión indefinida del

ejercicio de la notaría y la suspensión inmediata del ejercicio de la abogacía por un término de seis meses. Esta medida es proporcional a la magnitud de la falsedad que compromete la columna vertebral del sistema de autenticidad documental que impera en nuestro ordenamiento jurídico.

V

Por los fundamentos que anteceden, suspendemos de forma indefinida al Lcdo. Eddie A. Pérez Pérez del ejercicio de la notaría. Así también, decretamos la suspensión inmediata del ejercicio de la abogacía por un término de seis meses.

El señor Pérez Pérez deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Además, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar inmediatamente su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente. Asimismo, deberá acreditar a este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y su correspondiente Sentencia. No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal de solicitarlo en el futuro.

Notifíquese esta Opinión *Per Curiam* y su correspondiente Sentencia por correo electrónico al señor Pérez Pérez y personalmente.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:<br><br>Eddie A. Pérez Pérez<br>(TS-16,917) | CP-2020-0004 | Conducta Profesional |
|---|---|---|

Sentencia

En San Juan, Puerto Rico, a 15 de enero de 2026.

Por los fundamentos que anteceden, suspendemos de forma indefinida al Lcdo. Eddie A. Pérez Pérez del ejercicio de la notaría. Así también, decretamos la suspensión inmediata del ejercicio de la abogacía por un término de seis meses.

El señor Pérez Pérez deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Además, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar inmediatamente su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente. Asimismo, deberá acreditar a este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y su correspondiente Sentencia. No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal de solicitarlo en el futuro.

Notifíquese esta Opinión *Per Curiam* y su correspondiente Sentencia por correo electrónico al señor Pérez Pérez y personalmente.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal Supremo

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo